1   Angela C. Agrusa, Esq. (SBN: 131337)
        aagrusa@linerlaw.com
2   Allen Lohse, Esq. (SBN: 236018)
        alohse@linerlaw.com
3   LINER GRODE STEIN YANKELEVITZ
    SUNSHINE REGENSTREIF & TAYLOR LLP
4   1100 Glendon Avenue, 14th Floor
    Los Angeles, California 90024-3503
5   Telephone:  (310) 500-3500
    Facsimile:  (310) 500-3501
6
    D. Fernando Bobadilla, Esq. (SBN: 0136948)
7       fernando@bobadillafirm.com
    THE BOBADILLA LAW FIRM
8   185 SW 7 St., Suite 3511
    Miami, Florida 33130
9   Telephone: (786) 446-8643
    Facsimile: (786) 446-8641
10  *Admitted Pro Hac Vice*

11  Attorneys for Defendants
    MAYA MAGAZINES, INC. and MAYA
12  PUBLISHING GROUP, LLC

13          **UNITED STATES DISTRICT COURT**

14          **CENTRAL DISTRICT OF CALIFORNIA**

15

| | |
|---|---|
| 16  NOELIA LORENZO MONGE, an individual, and JORGE REYNOSO, an 17  individual, | Case No. CV09-05077 R (SSx) |
| 18          Plaintiffs, | [Assigned for all purposes to the Honorable Manuel L. Real, Courtroom 8] |
| 19          vs. | **DECLARATION OF D. FERNANDO BOBADILLA, ESQ. IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| 20  MAYA MAGAZINES, INC., a Florida Corporation, MAYA PUBLISHING 21  GROUP, LLC, a Florida Limited Liability Company, and DOES 1 through 10, 22  inclusive, | |
| 23          Defendants. | Complaint Filed:  July 14, 2009 Discovery Cutoff:  April 19, 2010 Summary Judgment Hrg: June 21, 2010 Trial Date: November 2, 2010 |

24
25
26
27
28

## DECLARATION OF D. FERNANDO BOBADILLA, ESQ.

I, D. Fernando Bobadilla, Esq., declare as follows:

1. I am the principal and owner of the Bobadilla Law Firm, lead counsel of record for Defendants Maya Publishing Group, LLC and Maya Magazines, Inc. (collectively "Defendants").

2. I have personal knowledge of the facts set forth herein and, if called upon to testify, I would and could testify competently thereto.

3. Attached hereto as Exhibit "A" is a true and correct copy of the Complaint in this action.

4. Attached hereto as Exhibit "B" is a true and correct copy of the face page and relevant portions of the transcript of the deposition of Juan Garcia Alejandro, Defendants' Editor.  This deposition was taken in this action on February 23, 2010.

5. Attached hereto as Exhibit "C" is a true and correct copy of the face page and relevant portions of the transcript of the deposition of Plaintiff Jorge Reynoso.  This deposition was taken in this action on April 13, 2010.

6. Attached hereto as Exhibit "D" is a true and correct copy of the face page and relevant portions of the transcript of the deposition of Plaintiff Noelia Lorenzo Monge.  This deposition was taken in this action on March 1, 2010.

7. Attached hereto as Exhibit "E" is a true and correct copy of the entire transcript of the sworn statement of Oscar Viqueira.  This sworn statement was taken in this action on March 8, 2010.

8. Attached hereto as Composite Exhibit "F" are true and correct copies of four (4) articles and Certified Translations of those Articles about Plaintiff Jorge Reynoso.

9. Attached hereto as Exhibit "G" is a true and correct copy of the Affidavit of Custodian of Records of We've Only Just Begun Wedding Chapel, Inc.

1        10.    Attached hereto as Exhibit "H" is a true and correct copy of the We've

2  Only Just Begun Wedding Chapel, Inc. Photographer Policy Acknowledgement.

3

4

5        I declare under penalty of perjury under the laws of the United States that the

6  foregoing is true and correct.

7

8

9        Executed this 1st day of June 2010, at Miami, Florida.

10

11

12                       D. Fernando Bobadilla

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF D. FERNANDO BOBADILLA, ESQ.
IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

0019503/002/ 464659v01

FILED

1  Michael W. Fattorosi, Esq., California State Bar No. 193538
   michael@fattlegal.com
2  Michael D. Kuznetsky, Esq., California State Bar No. 241045     2009 JUL 14  PM 2: 37
   mikek@fattlegal.com
3  FATTOROSI & ASSOCIATES, P.C.                                     CLERK U.S. DISTRICT COURT
   6300 Canoga Avenue, Suite 550                                    CENTRAL DIST. OF CALIF.
4  Woodland Hills, California 91367                                      LOS ANGELES
   (818) 881-8500, Fax: (818) 881-9008
5                                                                   BY _____

   Attorneys for Plaintiffs
6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10                                      CV09-5077 JSL (SSx)

11 NOELIA LORENZO MONGE, an individual, and )   CASE NO.
   JORGE REYNOSO, an individual,             )
12                                           )   COMPLAINT FOR DAMAGES FOR:
              Plaintiffs,                     )
13                                           )   (1) COPYRIGHT INFRINGEMENT;
   vs.                                        )   (2) COMMON LAW
14                                           )   MISAPPROPRIATION OF
   MAYA MAGAZINES, INC., a Florida Corporation, )  LIKENESS; AND
15 MAYA PUBLISHING GROUP, LLC, a Florida      )   (3) COMMERCIAL
   Limited Liability Company, and DOES 1 through )  MISAPPROPRIATION OF
16 10, inclusive,                             )   LIKENESS UNDER CALIFORNIA
                                              )   CIVIL CODE § 3344
17            Defendants.                     )
                                              )   DEMAND FOR JURY TRIAL
18 _____ )

19

20         COME NOW Plaintiffs, NOELIA LORENZO MONGE, an individual, and JORGE

21 REYNOSO, an individual (collectively "Plaintiffs") for their Complaint against MAYA

22 MAGAZINES, INC., a Florida Corporation, MAYA PUBLISHING GROUP, LLC, a Florida

23 Limited Liability Company, and DOES 1 through 10, inclusive (collectively "Defendants"),

24 allege as follows:

25                        <u>JURISDICTION AND VENUE</u>

26         1.    This is an action involving claims of copyright infringement under the Copyright

27 Act, 17 U.S.C. §§ 101, et seq. and misappropriation of likeness under the statutory and

28 common law of the State of California.  The Court has jurisdiction over Plaintiffs' federal

                                     1

Exhibit "A"

1 │ claims pursuant to 17 U.S.C. §§ 101, et seq. and 28 U.S.C. §§ 1331 and 1338(a).  This Court

2 │ has jurisdiction over Plaintiffs' related claims based on state law pursuant to 28 U.S.C. §

3 │ 1367.

4 │      2.     This Court has personal jurisdiction over Defendants, MAYA MAGAZINES, INC.

5 │ and MAYA PUBLISHING GROUP, LLC based on their significant contacts in the Central

6 │ District of California and elsewhere in the United States arising from, among other things, their

7 │ offering for sale and sale of magazine publications, their infringement in the Central District

8 │ of California of copyright rights protected by United States and California law, and their other

9 │ continuous and systemic contacts within the Central District of California.

10 │      3.     Venue in this judicial district is proper under 28 U.S.C. §1391(b) and/or 28

11 │ U.S.C. §1400(a).

12 │ **THE PARTIES**

13 │      4.     Plaintiff NOELIA LORENZO MONGE, professionally known as "Noelia"

14 │ (hereinafter referred to as "NOELIA") is an individual and a citizen of California residing within

15 │ the County of Los Angeles, California.

16 │      5.     Plaintiff JORGE REYNOSO (hereinafter referred to as "REYNOSO") is an

17 │ individual and a citizen of California residing within the County of Los Angeles, California.

18 │      6.     Defendant MAYA MAGAZINES, INC. (hereinafter referred to as "MAYA

19 │ MAGAZINES") is a corporation organized and existing under the laws of the State of Florida,

20 │ with its principal place of business within Miami-Dade County, Florida.  Plaintiff is informed

21 │ and believes, and thereon alleges, that MAYA MAGAZINES was and is in the business of

22 │ magazine publication and is an owner of the magazine entitled "TVnotas."

23 │      7.     Defendant MAYA PUBLISHING GROUP, LLC. (hereinafter referred to as

24 │ "MAYA PUBLISHING") is a Limited Liability Company organized and existing under the laws

25 │ of the State of Florida, with its principal place of business within Miami-Dade County, Florida.

26 │ Plaintiff is informed and believes, and thereon alleges, that MAYA PUBLISHING was and is

27 │ in the business of magazine publication and is an owner of the magazine entitled "TVnotas."

28 │ ///

COMPLAINT FOR DAMAGES

8.     The true names and capacities, whether individual, corporate, associate or otherwise, of defendants DOES 1 through 10 inclusive, are unknown to Plaintiffs, who therefore sue said defendants by such fictitious names. Plaintiffs will amend this Complaint to include their proper names and capacities when they have been ascertained. Plaintiffs are informed and believe, and based thereon allege, that each of the fictitiously named defendants participated in and are in some manner responsible for the acts described in this Complaint and damage resulting therefrom.

9.     Plaintiffs allege on information and belief that each of the defendants named herein as DOES 1 through 10 inclusive, performed, participated in, or abetted in some manner, the acts alleged herein, proximately caused the damages alleged hereinbelow, and are liable to Plaintiffs for the damages and relief sought herein.

10.     Plaintiffs allege on information and belief that, in performing the acts and omissions alleged herein, and at all times relevant hereto, each of the Defendants was the agent and employee of each of the other Defendants and was at all times acting within the course and scope of such agency and employment with the knowledge and approval of each of the other Defendants.

**FACTUAL ALLEGATIONS**

11.     This is an action arising under the Copyright Act, 17 U.S.C. §101 et seq., for knowing and intentional infringement of Plaintiffs' copyrighted works; namely six photographs of Plaintiffs' wedding and wedding night. This action also contains state law claims under California law that arise out of the same transaction and/or occurrences that form the basis of the Copyright cause of action.

12.     At all times mentioned herein NOELIA was and is an internationally renowned pop singer and model.   Her self-titled debut album was certified as a Gold album in the United States for 500,000 units sold by the Recording Industry Association of America (RIAA). During her career she has had nine Latin Billboard Top 40 hits. NOELIA has sold more than four-million albums worldwide and has been honored with eighteen worldwide Gold and nine worldwide Multi-Platinum certified albums.   NOELIA has won multiple awards including

3

1   Billboard's "Album of the Year" and Italy's "International Singer of the Year." She has toured

2   throughout the world playing in cities such as New York, Los Angeles and Rome.

3        13.    NOELIA has also been modeled for and been featured in and on the front cover

4   of numerous magazines, including "Maxim en Español" in July 2007, "People en Español" in

5   October 2007, "H Para Hombres" in the United States in June 2008 and "H Para Hombres"

6   in Mexico in January 2009. "H Para Hombres" is published and owned by Defendants.

7   Defendants previously paid NOELIA to model for "H Para Hombres." Plaintiffs are informed

8   and believe, and thereon allege, that "H Para Hombres" in June 2008 was the best selling

9   issue of "H Para Hombres" in the United States, and "H Para Hombres" in Mexico in January

10  2009 was one of the all time best selling issues of "H Para Hombres" in Mexico, initially selling

11  out of 400,000 copies.

12       14.    In addition to her musical career, NOELIA has guest starred in multiple Latin

13  American television shows.

14       15.    At all times mentioned herein REYNOSO was and is the manager of NOELIA's

15  international career. REYNOSO comes from one of the most powerful families of music

16  promoters for three decades. In 2001 REYNOSO emerged as one of the most recognized

17  managers and music producers in the Latin music industry after he produced an album

18  entitled "Desahogo" for Pilar Montenegro, a singer and actress.

19       16.    On or about January 3, 2007, NOELIA and REYNOSO were married at We've

20  Only Just Begun Wedding Chapel, Inc., a Nevada corporation, doing business as The Little

21  White Wedding Chapel, in Las Vegas, Nevada (hereinafter referred to as the "Chapel"). The

22  wedding ceremony was private and the only people present were Plaintiffs, a minister and a

23  wedding photographer. Both the minister and wedding photographer were employees of the

24  Chapel. Plaintiffs were diligent in having all other people excluded from their wedding

25  ceremony in order to maintain absolute privacy. In addition, no photographs were allowed to

26  be taken by non-sanctioned photographers.

27       17.    During and after the wedding, the wedding photographer and Plaintiffs took

28  pictures of Plaintiffs for Plaintiffs' sole use (hereinafter referred to as the "Photographs").

1 | Plaintiffs are identifiable in the Photographs as individuals.   The Photographs are
2 | copyrightable works in that they embody original and creative authorship.

3 |      18.    Plaintiffs did not disclose or confirm any details of their wedding to the public,
4 | including the Photographs.  Plaintiffs' rights license others to publish the Photographs,
5 | including without limitation for the first time or on an exclusive basis, are worth at least
6 | hundreds of thousands of dollars.  In fact, other celebrity wedding photographs have been
7 | sold for millions of dollars to magazines for a first time or exclusive publication.

8 |      19.    Over two years after the wedding, Defendants copied, reproduced, distributed
9 | and displayed the Photographs without Plaintiffs' authorization. This was done knowingly and
10 | intentionally in violation of Plaintiffs' rights, including but not limited to Plaintiffs' exclusive
11 | rights in the copyrights therein and thereto.  More specifically, Defendants published the
12 | Photographs in Volume 10, Issue Number 633 of the magazine entitled "TVnotas" (hereinafter
13 | referred to as the "Magazine").  Most of the Photographs are printed in their entirety.  The
14 | Magazine's publication date was on or about February 10, 2009. A true and correct copy of
15 | the relevant portions of the Magazine are attached hereto as Exhibit "A," which are herein
16 | incorporated by reference.

17 |      20.    The Chapel and Plaintiffs never sold, licensed or in any way authorized
18 | Defendants to use the Photographs in any manner, including in the Magazine.

19 |      21.    In addition, Defendants published the names, likeness and/or personalities of
20 | Plaintiffs in the text of the Magazine without their authorization or consent.

21 |      22.    It is clear from the headline of the Magazine and captions positioned over the
22 | Photographs that Defendants knew that they were using the Photographs, as well as the
23 | names and likenesses of Plaintiffs, without authorization.  Moreover, Defendants knew that
24 | the Magazine could generate increased profits by using the Photographs and names and
25 | likenesses of Plaintiffs without authorization.

26 |      23.    The main headline on the front cover of the Magazine states in Spanish, "La
27 | boda secreta de Noelia y Jorge Reynosa en Las Vegas;" this translates to "The secret
28 | wedding of Noelia and Jorge Reynoso in Las Vegas."  The name "Noelia" is printed in extra

1    large, yellow font.  The headline further states, "Hasta conseguimos fotos de su primera

2    noche de casados;" this translates to "We even obtained photographs of their first night of

3    marriage."  These headlines are positioned directly over some of the Photographs, which

4    make up approximately 75% of the Magazine's cover.

5        24.    This prominent placement of the Photographs on the Magazine's cover indicates

6    that Defendants were well aware of the likelihood that the unauthorized use of the

7    Photographs would lead to increased sales of the Magazine.  In fact, the Magazine's table of

8    contents does not list the page numbers where the Photographs are published.  In fact, the

9    Photographs are published on the last few pages of the Magazine.  This forces consumers

10   looking to see the Photographs to read almost the entire magazine.

11       25.    "Solo en TVn," which translates to "Only in TVn," is further printed over the

12   Photographs on the Magazine's cover.  This misleadingly implies that the Defendants' use

13   of the Photographs is authorized by Plaintiffs.  "TVn" is Defendants' own abbreviation for

14   "TVnotas."

15       26.    Within the Magazine, more of the Photographs are featured over a two-page

16   spread.  The two pages contain the following headline, "Al parecer, la pareja se casó en Las

17   Vegas en enero de 2007;" this translates to "It seems like the couple got married in Las

18   Vegas in January of 2007."  Underneath in an even larger headline, the Magazine states,

19   "Primeras y únicas fotos de la boda secreta de **Noelia** y **Jorge Reynoso**" (emphasis in

20   original); this translates to "First and only photographs of the secret wedding of **Noelia** and

21   **Jorge Reynoso**."

22       27.    One of the Photographs in the Magazine covers a full page.  Printed on top of

23   this photograph is "Solo en TVn," which translates to "Only in TVn."  In addition, the caption

24   printed on this photograph includes the following:

25           De hecho, mucho se ha comentado sobrea una supuesta boda secreta en Las
             Vegas, Nevada, occurida en enero de 2007, pero nadie hasta ahora había
26           mostrado fotografías de ese inolvidable día.  *TVnotas* las consiguió, y te las
             enseña en exclusiva" (emphasis in original);
27

28   ///

COMPLAINT FOR DAMAGES

1  which translates to:

2           In fact, much has been said about the supposed secret wedding in Las Vegas,
         Nevada, occurring in January 2007, but nobody before now has shown
3           photographs of this unforgettable day. *TVnotas* has obtained them, and is
         showing them to you exclusively."
4

5  Again, this misleadingly implies that the Defendants' use of the Photographs is authorized by

6  Plaintiffs.

7           28.    Another page of the Magazine is made up of four of the Photographs.  The

8  footer of this page states in large print, "Aunque no han querido confirmar su matrimonio,

9  estas imágenes que conseguimos hablan por sí solas;" this translates to "Even though they

10  haven't wanted to confirm their marriage, these images that we found speak for themselves."

11           29.    Part of NOELIA's success is attributable to her status as an unwed international

12  sex symbol.  As a proximate result of the above misappropriation, Plaintiffs' suffered loss of

13  reputation which caused their hurt feelings and loss of publicity value, all to their general

14  damage in an amount according to proof.

15                              **FIRST CAUSE OF ACTION**

16                              **COPYRIGHT INFRINGEMENT**

17               **(By Plaintiffs Against All Defendants and DOES 1 through 10)**

18           30.    Plaintiffs reallege each and every allegation set forth in paragraphs 1 through

19  29, inclusive, and incorporate them herein by this reference.

20           31.    The six at-issue Photographs contain a substantial amount of wholly original

21  expression and are copyrightable subject matter under the laws of the United States.

22           32.    Plaintiffs are the sole proprietor of all right, title, and interest to the Photographs.

23  On or about March 5, 2009, the Chapel assigned its full rights and title in and to the copyrights

24  of all Photographs taken by the wedding photographer to Plaintiffs.  A true and correct copy

25  of the Copyright Assignment is attached hereto as Exhibit "B."  On or about March 10, 2009,

26  NOELIA and REYNOSO registered copyrights for these Photographs in the United States

27  Copyright office.  On or about March 9, 2009, NOELIA and REYNOSO registered copyrights

28  for the Photographs taken by NOELIA and REYNOSO respectively in the United States

7

1    Copyright office.   True and correct copies of the Certificates of Registration for the
2    Photographs are attached hereto as Exhibits "C" through "E."

3        33.    By means of the actions complained of herein, Defendants have infringed and
4    will continue to infringe Plaintiffs' exclusive rights in and to the Photographs.

5        34.    Defendants, and each of them, have knowingly and willfully copied, reproduced,
6    distributed and displayed the Photographs in the Magazine, and are otherwise infringing upon
7    Plaintiffs' exclusive rights in the Photographs for the specific purpose of infringing Plaintiffs'
8    rights in and to the copyrights in the Photographs for Defendants' own benefit and pecuniary
9    interest and to the detriment of Plaintiffs. By copying, reproducing, distributing and displaying
10   the Photographs in the Magazine, Defendants have infringed Plaintiffs' exclusive rights in and
11   to the copyrights in the Photographs.

12       35.    Pursuant to 17 U.S.C. § 504, Plaintiffs seek to recover actual damages suffered
13   by Plaintiffs as the result of Defendants' infringement and any and all profits of Defendants
14   that are attributable to the infringement and are not taken into account in computing actual
15   damages.   Alternatively, Plaintiffs may elect at any time before final judgment to recover
16   instead of actual damages and profits an award of statutory damages for all infringements
17   involved in the action for which Defendants are individually liable or are jointly and severally
18   liable in the sum of not less than $750 nor more than $30,000 per infringement as the Court
19   considers just.

20       36.    Plaintiffs further allege that the infringements were committed willfully by
21   Defendants and request the Court to increase the statutory damages to a sum of not more
22   than $150,000 per infringement.

23       37.    Pursuant to 17 U.S.C. § 505, Plaintiffs further seek to recover their costs and
24   reasonable attorneys' fees. As a result of Defendants' actions, Plaintiffs have been required
25   to and has retained the services of the law firm Fattorosi & Associates, P.C., and has and will
26   incur attorneys' fees and court costs herein.

27   ///

28   ///

8

## SECOND CAUSE OF ACTION

### COMMON LAW MISAPPROPRIATION OF LIKENESS

#### (By Plaintiffs Against All Defendants and DOES 1 through 10)

38.     Plaintiffs reallege each and every allegation set forth in paragraphs 1 through 37, inclusive, and incorporate them herein by this reference.

39.     As alleged herein, Defendants, and each of them, have invaded Plaintiffs' right to privacy by using Plaintiffs' distinctive identities, including without limitation their name, likenesses and/or personalities, in the text of the Magazine and otherwise.  In doing so, Defendants, and each of them, have knowingly appropriated Plaintiffs' name and/or likeness for Defendants' advantage, commercially and/or otherwise.   Said appropriation was unauthorized and done without Plaintiffs' consent.  Plaintiffs are informed and believe that Defendants used Plaintiffs' identities to sell the Magazine and by use of said appropriation, Defendants have earned increased revenue.

40.     As a proximate result of the above misappropriation, Plaintiffs' suffered loss of reputation which caused their hurt feelings, suffering and loss of publicity value, all to their general damage in an amount according to proof.

41.     As a further proximate result of the above-mentioned misappropriation, Plaintiffs has suffered injury to their business, all to their special damage in an amount according to proof.

42.     Defendants' misappropriation, as alleged above, was oppressive and malicious within the meaning of Civil Code Section 3294 in that it subjected Plaintiffs to cruel and unjust hardship in willful and conscious disregard of Plaintiffs' rights and safety, thereby entitling Plaintiffs to an award of punitive damages.

///

///

///

///

///

9

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### THIRD CAUSE OF ACTION

### COMMERCIAL MISAPPROPRIATION OF LIKENESS

### UNDER CALIFORNIA CIVIL CODE § 3344

### (By Plaintiffs Against All Defendants and DOES 1 through 10)

43.     Plaintiffs reallege each and every allegation set forth in paragraphs 1 through 42, inclusive, and incorporate them herein by this reference.

44.     As alleged herein, Defendants, and each of them, have invaded Plaintiffs' right to privacy by using Plaintiffs' name, likeness and/or photograph(s) in the text and otherwise on the cover of and in the Magazine.  In doing so, Defendants, and each of them, have knowingly appropriated Plaintiffs' name and/or likeness for Defendants' advantage in direct connection with advertising and commercial sales.  Said appropriation was unauthorized and done without Plaintiffs' consent.  Plaintiffs are informed and believe that Defendants have earned increased revenue by said appropriation.

45.     As a proximate result of the above misappropriation, Plaintiffs' suffered loss of reputation which caused their hurt feelings, suffering and loss of publicity value, all to their general damage in an amount according to proof.

46.     As a further proximate result of the above-mentioned misappropriation, Plaintiffs has suffered injury to their business, all to their special damage in an amount according to proof.

47.     Defendants' misappropriation, as alleged above, was oppressive and malicious within the meaning of Civil Code Section 3294 in that they subjected Plaintiffs to cruel and unjust hardship in willful and conscious disregard of Plaintiffs' rights and safety, thereby entitling Plaintiffs to an award of punitive damages.

///

///

///

///

///

10

1

## **PRAYER FOR RELIEF**

2   WHEREFORE, Plaintiffs, NOELIA LORENZO MONGE and JORGE REYNOSO pray

3   for judgment against Defendants, and each of them, as follows:

4   **FOR THE FIRST CAUSE OF ACTION:**

5      1.   For actual damages resulting from Defendants' copyright infringement pursuant

6         to 17 U.S.C. § 504 in an amount according to proof at trial;

7      2.   For any and all profits of Defendants that are attributable to the infringement

8         and are not taken into account in computing actual damages pursuant to 17

9         U.S.C. § 504;

10     3.   For Plaintiffs' costs and reasonable attorneys' fees under the Copyright Act

11        pursuant to 17 U.S.C. § 505;

12  **FOR THE SECOND CAUSE OF ACTION:**

13     4.   For general and special compensatory damages in an amount according to

14        proof at trial;

15     5.   For punitive and exemplary damages pursuant to California Civil Code § 3294

16        in an amount according to proof at trial;

17  **FOR THE THIRD CAUSE OF ACTION:**

18     6.   For general and special compensatory damages in an amount according to

19        proof at trial;

20     7.   For any and all profits of Defendants that are attributable to the unauthorized

21        use and are not taken into account in computing actual damages pursuant to

22        California Civil Code § 3344;

23     8.   For Plaintiffs' costs and reasonable attorneys' fees California Civil Code § 3344;

24     9.   For punitive and exemplary damages pursuant to California Civil Code §§ 3294

25        and/or 3344 in an amount according to proof at trial;

26  ///

27  ///

28  ///

11

**COMPLAINT FOR DAMAGES**

1

## FOR ALL CAUSES OF ACTION:

2      10.    For interest provided by law; and

3      11.    For such other and further relief against Defendants as the Court may deem

4              just and proper.

5

6   Dated: July 13, 2009                    By:

7                                               Michael W. Fattorosi, Attorney for Plaintiffs
                                                FATTOROSI & ASSOCIATES, P.C.
8                                               6300 Canoga Avenue, Suite 550
                                                Woodland Hills, California 91367
9                                               michael@fattlegal.com
                                                Telephone No.: 818-881-8500

10

11                          ## DEMAND FOR JURY TRIAL

12      Plaintiffs hereby demand a jury trial pursuant to F.R.Civ.P. 38(b) and Local Central

13   District Rule 38-1.

14

15   Dated: July 13, 2009                    By:

16                                              Michael W. Fattorosi, Attorney for Plaintiffs
                                                FATTOROSI & ASSOCIATES, P.C.
17                                              6300 Canoga Avenue, Suite 550
                                                Woodland Hills, California 91367
18                                              michael@fattlegal.com
                                                Telephone No.: 818-881-8500

19

20

21

22

23

24

25

26

27

28

**COMPLAINT FOR DAMAGES**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT "A"**



Hablamos con el polémico niño torero ¡que mató 6 becerros en 2 horas!

# TVNOTAS

Edición USA

¡Semanal e irresistible!

## La boda secreta

de *Noelia* y Jorge Reynoso en Las Vegas

Hasta conseguimos fotos de su primera **¡noche de casados!**

Laura Flores ahora adoptó una niña

La esposa lesbiana de Kippy Casado

Imágenes inéditas

Afirma ex esposa de Manzanero: *"Primero las enamora ¡y luego las golpea!"*

Ahora que su hijo irá al *college*, Sofía Vergara ¡quiere buscar marido!

USA $ 3.29
Display until 2/17   Exhiba hasta Febrero 17



*pareja se casó en Las Vegas en enero de 2007*

# ras y únicas fotos de la boda
## ta de Noelia y Jorge Reynoso



Noelia Lorenzo-Monge y Jorge Reynoso lucían felices, ella con un minivestido stretch y una sexy liga, mientras él vistió de traje y corbata.



Luego de unos años de relación, Reynoso finalmente "le cumplió".





Coqueta, sugerente y feliz, como toda esposa en ese día, la cantante posó lista para la noche de bodas.

Aunque no han querido confirmar su matrimonio, estas imágenes que conseguimos hablan por sí solas.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT "B"**

## COPYRIGHT ASSIGNMENT

For good and valuable consideration, receipt of which is hereby acknowledged, We've Only Just Begun Wedding Chapel, Inc. dba The Little White Wedding Chapel, 1301 Las Vegas Boulevard South, Las Vegas, NV 89114 ("Assignor") does hereby irrevocably and in perpetuity grant, convey and assign unto Noelia Lorenzo Monge and Jorge Reynoso, their successors, assigns and licensees, the exclusive worldwide right, title and interest in and to the copyrights in any and all photographs and videos owned by Assignor concerning the wedding between Noelia Lorenzo Monge and Jorge Reynoso that occurred on Assignor's premises on January 3, 2007. This agreement may be filed with the Register of Copyright as an official transfer of copyrights.

UNDERSTOOD, AGREED AND ACCEPTED:

ASSIGNOR:

Signature: _____

Date: ___3-05-09_____

Legal Name: We've Only Just Begun Wedding Chapel, Inc.

By Its. President – Charolette Richards

Address: 1301 Las Vegas Boulevard South, Las Vegas, NV 89114

Telephone Number: (702) 382-5943

Email Address: iwedu@alittlewhitechapel.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT "C"**

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Registration Number:**

## VAu 984-156

**Effective date of registration:**

March 10, 2009

## Title

**Title of Work:** Noelia and Jorge Rynoso Wedding Pictures

## Completion/Publication

**Year of Completion:** 2007

## Author

■ **Author:** We've Only Just Begun Wedding Chapel Inc.

**Author Created:** photograph(s)

**Work made for hire:** Yes

**Citizen of:** United States     **Domiciled in:** United States

## Copyright claimant

**Copyright Claimant:** Jorge Reynoso

█████████████████████    *Redacted For Privacy Purposes*

**Transfer Statement:** By written agreement

**Copyright Claimant:** Noelia Lorenzo Monge

████████████████████

**Transfer Statement:** By written agreement

## Certification

**Name:** Michael W. Fattorosi

**Date:** March 10, 2009

IPN#:

Registration #:    VAU000984156

Service Request #:   1-168870981

Michael W Fattorosi
6300 Canoga Ave
Suite 550
Woodland Hills, CA 91367

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT "D"**

# Certificate of Registration



This Certificate issued under the seal of the Copyright Office in accordance with title 17, *United States Code*, attests that registration has been made for the work identified below. The information on this certificate has been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Registration Number:**

## VAu 984-072

**Effective date of registration:**

March 9, 2009

## Title

**Title of Work:** Noelia and Jorge Reynoso Wedding Pictures

## Completion/ Publication

**Year of Completion:** 2007

## Author

■  **Author:** Noelia Lorenzo Monge

**Author Created:** photograph(s)

**Citizen of:** United States          **Domiciled in:** United States

## Copyright claimant

**Copyright Claimant:** Noelia Lorenzo Monge

*Redacted For Privacy Purposes*

## Certification

**Name:** Michael W. Fattorosi

**Date:** March 9, 2009

Page 1 of 1

IPN#:


Registration #:    VAU000984072


Service Request #:   1-168439063


Michael W Fattorosi
6300 Canoga Ave
Suite 550
Woodland Hills, CA 91367

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT "E"**

# Certificate of Registration



This Certificate issued under the seal of the Copyright
Office in accordance with title 17, *United States Code*,
attests that registration has been made for the work
identified below. The information on this certificate has
been made a part of the Copyright Office records.

*Marybeth Peters*

Register of Copyrights, United States of America

**Registration Number:**

## VAu 984-075

**Effective date of
registration:**

March 9, 2009

## Title

**Title of Work:** Noelia and Jorge Reynoso Wedding Pictures

## Completion/ Publication

**Year of Completion:** 2007

## Author

**Author:** Jorge Reynoso

**Author Created:** photograph(s)

**Work made for hire:** No

**Citizen of:** United States       **Domiciled in:** United States

## Copyright claimant

**Copyright Claimant:** Jorge Reynoso

*Redacted For
Privacy Purposes*

## Certification

**Name:** Michael W. Fattorosi

**Date:** March 9, 2009

IPN#:

**Registration #:**   VAU000984075

**Service Request #:**   1-168384651

Michael W Fattorosi
6300 Canoga Ave
Suite 550
Woodland Hills, CA 91367

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge J. Spencer Letts and the assigned discovery Magistrate Judge is Suzanne H. Segal.

The case number on all documents filed with the Court should read as follows:

## CV09- 5077 JSL (SSx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

The United States District Judge assigned to this case will review all filed discovery motions and thereafter, on a case-by-case or motion-by-motion basis, may refer discovery related motions to the Magistrate Judge for hearing and determination

= = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = =

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |
|---|---|---|

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)     NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

Michael W. Fattorosi, Esq., Calif. State Bar # 193538
michael@fattlegal.com
FATTOROSI & ASSOCIATES, P.C.
6300 Canoga Avenue, Suite 550
Woodland Hills, California 91367
Tel: 818-881-8500/Fax: 818-881-9008

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NOELIA LORENZO MONGE, an individual, and JORGE REYNOSO, an individual,<br><br>PLAINTIFF(S)<br><br>v.<br><br>MAYA MAGAZINES, INC., a Florida Corporation, MAYA PUBLISHING GROUP, LLC, a Florida Limited Liability Company, and DOES 1 through 10, *inclusive,*<br><br>DEFENDANT(S). | CASE NUMBER<br><br>CV09-5077 JSL (SSx)<br><br><br>SUMMONS |

TO:    DEFENDANT(S):  <u>MAYA MAGAZINES, INC. and MAYA</u> PUBLISHING GROUP, LLC

A lawsuit has been filed against you.

Within __20__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer or motion must be served on the plaintiff's attorney, <u>Michael W. Fattorosi</u>_____, whose address is <u>6300 Canoga Avenue, Suite 550, Woodland Hills, CA 91367</u>_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: _____ **JUL 1 4 2009** _____          By: _Natalia Hervera_____
                                                                                                Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

CV-01A (12/07)                                                     SUMMONS

Case 2:09-cv-05077-R-SS   Document 1   Filed 07/14/2009   Page 30 of 31

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)
NOELIA LORENZO MONGE, an individual,
and JORGE REYNOSO, an individual

**DEFENDANTS**
MAYA MAGAZINES, INC., a Florida Corporation,
MAYA PUBLISHING GROUP, LLC, a Florida Limited Liability Company,
and DOES 1 through 10, inclusive

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
Michael W. Fattorosi, Calif. State Bar No.193538; FATTOROSI &
ASSOCIATES, P.C.; 6300 Canoga Avenue, Suite 550, Woodland Hills, CA
91367; Tel. (818) 881-8500

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff   ☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☐1 | Incorporated or Principal Place of Business in this State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

**IV. ORIGIN** (Place an X in one box only.)

☒1 Original Proceeding   ☐2 Removed from State Court   ☐3 Remanded from Appellate Court   ☐4 Reinstated or Reopened   ☐5 Transferred from another district (specify):   ☐6 Multi-District Litigation   ☐7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☒ Yes ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒No   ☐ MONEY DEMANDED IN COMPLAINT: $ According to Proof

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Copyright Infringement (17 U.S.C. 101, et. seq.)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 535 Death Penalty | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 540 Mandamus/ Other | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 550 Civil Rights | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 555 Prison Condition | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE / PENALTY** | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 610 Agriculture | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 620 Other Food & Drug | ☒ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 630 Liquor Laws | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 640 R.R. & Truck | **SOCIAL SECURITY** |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 650 Airline Regs | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 660 Occupational Safety /Health | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | **REAL PROPERTY** | **IMMIGRATION** | ☐ 446 American with Disabilities - Other | ☐ 690 Other | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | | | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**FOR OFFICE USE ONLY:**   Case Number:   **CV09-5077**

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

CV-71 (05/08)   CIVIL COVER SHEET   Page 1 of 2

### UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No  ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No  ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐  Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| NOELIA LORENZO MONGE - Los Angeles County, California<br>JORGE REYNOSO - Los Angeles County, California | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐  Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| MAYA MAGAZINES, INC., a Florida Corporation<br>MAYA PUBLISHING GROUP, LLC, a Florida Limited Liability Company | Miami-Dade County, Florida<br>Miami-Dade County, Florida |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles County, California | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved.

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _____   Date   7/13/09

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |



1   .

2              UNITED STATES DISTRICT COURT
              CENTRAL DISTRICT OF CALIFORNIA
3

4               CASE NO. CV09-5077R (SSx)

5                      (Assigned to District
                      Judge Manuel L. Real and
6                      Discovery Magistrate
                      Judge Suzanne H. Segal)
7

8   NOELIA LORENZO MONGE, an individual,
    And JORGE REYNOSO, an individual,
9
             Plaintiffs,
10
    vs.
11
    MAYA MAGAZINES, INC., a Florida
12  Corporation, MAYA PUBLISHING GROUP, LLC.,
    A Florida Limited Liability Company, and
13  DOES 1 through 10, inclusive,

14           Defendants.

15

16

17                   DEPOSITION

18                       OF

19

20           JUAN GARCIA ALEJANDRO

21

22            66 West Flagler Street
                 Miami, Florida
23
               February 23, 2010
24             2:05 p.m. - 4:20 p.m.

25

              KRESSE & ASSOCIATES, LLC
                 305-371-7692                    Exhibit "B"

1    rights.  Did you ask to see documentation of

2    these rights?

3         A.    Well, I am testifying that he told me

4    that he had the rights.

5         Q.    I understand that.  But did you say,

6    "Show me some documentation that shows me you

7    have these rights.  Maybe you have a contract

8    with Jorge and Noelia that gives you the

9    rights"?

10        A.    No.

11        Q.    Okay.  Did you ask to see model

12   releases?

13        A.    Well, what are model releases?

14        Q.    Do you know what a model release is?

15        A.    I don't understand what you are

16   talking about.

17        Q.    When you take a picture of someone and

18   you want to be able to use that photograph, the

19   model has to sign over the rights to someone

20   else to be able to use that picture for whatever

21   purpose.

22        A.    You are asking me if he showed me --

23   if he showed me the signature, the rights, when

24   someone gave him the rights?

25        Q.    Sure.

1     A.    If he showed me, no.

2     Q.    And you didn't ask?

3     A.    No.

4     Q.    Okay.  And you didn't ask because of

5 why?

6     A.    Because -- why didn't I ask?

7     Q.    Yes.

8     A.    Because that is not usual or

9 customary.  Because the business, where it has

10 to do with the entertainment magazine, when a

11 photographer comes to the magazine with regard

12 to the material and says that they have the

13 rights in order to sell them, then -- I would

14 not know the operation of other publications,

15 but for me, in order to make sure, I ask for

16 them to sign a document saying that they have

17 the rights, and they are giving up those rights.

18     Q.    Okay.  Let's talk about that.

19          (Plaintiff's No. 1, contract, was

20 marked for Identification.)

21 BY MR. FATTOROSI:

22     Q.    What I am going to show you is the

23 document that I think you are referring to.

24 Now, this is written in English.  Correct?

25     A.    Um-humm.

Jorge Reynoso
April 13, 2010

Page 1

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

- - -

NOELIA LORENZO MONGE, et al., ) Case No. CV 09-5077-R
                                )
              Plaintiffs,       )
                                )
        vs.                     )
                                )
MAYA MAGAZINES, INC., et al.,   )
                                )
              Defendants.       )
                                )

DEPOSITION OF

JORGE REYNOSO

LOS ANGELES, CALIFORNIA

APRIL 13, 2010

STRATOS LEGAL SERVICES, LP
1001 West Loop South
Suite 809
Houston, Texas   77027
(713) 481-2180

REPORTED BY:   TAMMIE HALL, CSR NO. 11525



Exhibit "C"

Jorge Reynoso
April 13, 2010

Page 26

1    A.   Years later.  I don't think my wife sitting

2    and showing her panties in bed is news.  Is that news

3    to you?  Not to me.

4    Q.   Is your question rhetorical, or are you

5    actually asking me a question because you are not

6    allowed to ask me questions other than to explain my

7    questions to you.

8    At the time that my client published these

9    photographs, did the marketplace for Noelia -- did they

10   know that she was married?

11   A.   No.

12   Q.   They didn't know that?

13   A.   If somebody knew maybe 1 percent but not the

14   vast majority of her fans and the people who purchased

15   tickets to see her or something related to her, but

16   maybe, maybe somebody who's maybe digging in somewhere

17   write about the dates of a wedding, but it was never

18   news.

19   Q.   So the marriage was a secret?

20   A.   Exactly.  That's what we paid for secrecy at

21   the chapel.

22   Q.   Why did you decide to have a secret wedding?

23   A.   I just mentioned to you that we're trying to

24   protect her image of being a single singer to appeal to

25   young people.

Jorge Reynoso
April 13, 2010

Page 27

1   Q.   Were there any other reasons?

2   A.   Huh?

3   Q.   Were there any other reasons?

4   A.   No, just marketing reasons.

5   Q.   Did you ever tell your wife that that was

6   the reason you were having a secret wedding?

7   A.   We both agreed to that.

8   Q.   Then can you explain to me why she didn't

9   know that this was the reason you were having a secret

10   wedding because in her deposition testimony she stated

11   it was a private?  It was something she didn't want to

12   share.  She didn't say it was anything related to

13   business.

14   A.   You are asking me.  She got her motives.  I

15   got mine.  I'm the manager.  I'm the business guy.

16   She's a manager.

17   Q.   Let's go back to the sponsors that you lost.

18   What was the value of the CXI sponsorship that you

19   lost.

20   A.   I have no idea.  I have no idea.  Normally

21   those companies don't give you -- they'll give you

22   different amounts of money.  I can't really tell

23   because we were in the beginning of that.  As a matter

24   of fact, it's a company that was trying to buy

25   advertising from your company by the way.  So

Jorge Reynoso
April 13, 2010

Page 67

1   offered me the services who explained the different

2   services and prices.

3          Q.   Did he take any photographs?

4          MR. FATTOROSI:   Did he take any photographs of

5   him?

6          THE WITNESS:   Of me?

7          Q.   BY MR. BOBADILLA:   The subject photographs?

8          A.   Yeah, one of them took pictures of us with

9   the priest.   The same guy who I got the chapel from,

10  yes.   He did take one of the pictures.

11         Q.   Okay.

12         A.   One or two of the pictures to me, Noelia,

13  and the priest.

14         Q.   Let's go to what I've marked as Exhibit No.

15  2.   Which is the cover of TV Notas of the article in

16  your complaint.

17         A.   Uh-huh.

18         Q.   And a copy of an interior page from that

19  article.

20         A.   Uh-huh.

21         Q.   It's not the entire article.

22         A.   Uh-huh.

23         (Defendants' Exhibit 2 was marked for

24  identification.)

25         Q.   BY MR. BOBADILLA:   I've marked the

Jorge Reynoso
April 13, 2010

Page 68

1   photographs -- certain photographs with a number?

2       A.   Uh-huh.

3       Q.   Do you see them?

4       A.   Yeah.

5       Q.   I'm going to ask you questions about each

6   specific photograph.   Photograph No. 1, can you tell me

7   who took that photograph?

8       A.   No. 1, the priest.   I'm sure the priest took

9   that one.

10      Q.   And is that photograph taken after you were

11  married?

12      A.   Right in the chapel.

13      Q.   And you've already exchanged vows and all

14  that?

15      A.   Yes.

16      Q.   Picture No. 2, where is that picture taken?

17      A.   Playboy Club in the Palms Hotel.   It's

18  called Playboy Bar and Casino in the Palms Hotel.

19      Q.   Who took that picture?

20      A.   I don't recall.

21      Q.   Do you know why Noelia believes that a

22  waitress took that picture?

23      A.   Because she maybe thinks she did because we

24  have another picture in the same bar that a waiter took

25  that picture.   She took one picture of me and trying to

Jorge Reynoso
April 13, 2010

Page 69

1   get a sign of the logo of the Playboy behind.

2          I've got that original picture, and then we

3   took a picture of both of us in the same sequence.

4   I've got those pictures.  A waiter took pictures of us.

5   As a matter of fact, I cropped one of those pictures to

6   use it for me, and the back of that picture is the logo

7   of Playboy.

8          So she may think that we have a picture of

9   us together.  The waiter or waitress took a picture

10  from us, but she took a couple pictures of myself

11  looking at the bar with us holding a cigar and we were

12  trying to get the logo of the Playboy behind me.

13          Q.  Let's look at picture No. 3.  Is that in the

14  Westin hotel?

15          A.  Yes, it is.

16          Q.  And who took that photograph?

17          A.  I did.

18          Q.  Let's turn to the next page -- actually

19  before which turn to the next page, the photograph on

20  the bed -- is that the wedding night?

21          A.  Yes, that was the same night.

22          Q.  Let's turn to the next page, picture No. 4.

23  Who took that photograph?

24          A.  The employee who sold me the services at the

25  wedding chapel.  Same guy that we were talking about

Jorge Reynoso
April 13, 2010

Page 70

1   before.

2          Q.  Picture No. 5 -- who took that photograph?

3          A.  I think that was the priest because he was

4   taking pictures from us and the guy that was helping.

5   He just took a few.  This picture specifically the

6   priest was taking this picture because when we were

7   together in the chapel, it was only me, Noelia, and the

8   priest.  Even this guy used to walk in and out when the

9   ceremony was, but this was the priest definitely.  The

10  one kissing was the priest.

11         Q.  So you are sure that that was the priest

12  that took that one?

13         A.  Yeah, I'm pretty sure.

14         Q.  Okay.  No. 6 -- who took that photograph?

15         A.  That one Noelia refers as the waiters,

16  waitress, yeah, took that picture.

17         Q.  Was it a waiter or waitress?

18         A.  One waiter took the picture, and it was

19  wrong because he didn't get the logo, and then we asked

20  a waitress.  We asked two different people.  I recall

21  that because my obsession was to get the logo behind,

22  and the first person I asked they didn't get the logo.

23  I wanted the neon logo in the middle of the bar to be

24  behind us.

25         Q.  Picture No. 6 -- was that a waiter or

Jorge Reynoso
April 13, 2010

Page 84

1      A.   I had no idea.  We noticed that when the

2  magazine was out.

3      Q.   And the first time you ever learned of it

4  was when the magazine was published?

5      A.   The first time I learned was when my mother

6  was crossing the bridge from San Diego, Tijuana where

7  they sell magazines.  You see all the news people

8  selling them.

9         The first time I leaned is because she

10  called me yelling how dare I marry because she didn't

11  know about it.  My own mother didn't know about it.

12      Q.   That's how you learned about --

13      A.   That's how I learned from my mother

14  screaming over the phone why I never told her.

15      Q.   And this happened shortly after the

16  publication?

17      A.   Yeah.  Actually, you guys come out on

18  Tuesdays in Mexico.  I think it was the same day she

19  called me or something.  She called me because she got

20  the magazine.  She asked me "You got married?"

21         I said, "No."

22         She said, "So you lie to me.  You are

23  married with Noelia."

24         I said, "No."

25         She said, "You did because I have the

Jorge Reynoso
April 13, 2010

Page 85

1   magazine right here.  I'm crossing the border."

2        Every time you cross the border, they sell

3   magazines and newspapers.  She had the magazine in her

4   hand.

5        Q.  Did you ever formulate a theory as to how it

6   is someone got ahold of these photographs?

7        A.  Oh, yeah.  Yes.

8        Q.  Can you tell me what that theory is?

9        A.  Somebody stole it because there is no way --

10  nobody knew about this, not even my mother.  Not a

11  single member of my family knew about the wedding.

12  Nobody.  Not even the people who work around us.

13       Q.  And did you specifically -- did you ever

14  have any theories as to how it is someone stole them or

15  where or when?

16       A.  When something like that happened, you have

17  many theories, but never conclusions.  We didn't give

18  out those pictures.  We could have easily given it out

19  to a magazine if we wanted to, even if we wanted to

20  make money.

21       But I've got a lot of theories, but I can't

22  really remember.  I was so furious, and Noelia was so

23  devastated, especially to the fact that it wasn't

24  even -- it was the fact that they disclosed we were

25  married because she was laying in bed showing her

Noelia Lorenzo Monge
March 1, 2010

Page 1

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

NOELIA LORENZO MONGE, an )
individual, and JORGE )
REYNOSO, an individual, )
                           )
          Plaintiffs,      )
                           )
     vs.                   ) Case No. 2:09-cv-05077-R-SS
                           )
MAYA MAGAZINES, INC., a    )
Florida corporation, MAYA  )
PUBLISHING GROUP, LLC, a   )
Limited Liability Company, and)
DOES 1 through 10, inclusive, )
                           )
          Defendants.      )
_____)

DEPOSITION OF NOELIA LORENZO MONGE

Los Angeles, California

Monday, March 1, 2010

Reported by:
DENISE A. JONES
CSR No. 12900

Exhibit "D"
ORIGINAL

Noelia Lorenzo Monge
March 1, 2010

Page 58

1    A    (In English.)   The 3rd of January?

2    Q    Of 2007.

3    A    Uh-huh.

4    Q    Where were you married?

5    A    (In English.)   Las Vegas.

6    Q    And were you married at The Little White

7    Wedding Chapel?

8    A    (In English.)   Uh-huh, yes.

9         THE REPORTER:   Are we going to do this in

10   Spanish or English?

11        MR. FATTOROSI:   Spanglish.

12        MR. BOBADILLA:   I'm sorry, I didn't notice.

13   BY MR. BOBADILLA:

14   Q    You stated in your complaint in this action

15   that this was a secret wedding?

16   A    Yes.

17   Q    Is that true?

18   A    Yes.

19   Q    Are you familiar with the complaint in this

20   action?

21   A    Yes.

22   Q    Do you understand that in your complaint you

23   made statements about things that my clients did wrong?

24   A    Yes.

25   Q    Did you read the complaint before your attorney

Noelia Lorenzo Monge
March 1, 2010

Page 59

1    filed it?

2        A   More or less, yes.  There are legal terms that

3    I'm not familiar with.

4        Q   But the factual statements, you understand

5    those?

6        A   Yes.

7        Q   And are they true?

8        A   Yes.

9        Q   Tell me the circumstances under why you decided

10   to have a secret wedding?

11       A   Because, for me, it's something personal.

12       Q   For you it's something personal?

13       A   Yes.

14       Q   Any other reasons?

15       A   I wanted to keep my private life personal, my

16   personal life personal.

17       Q   There are no other reasons, then?

18       A   No, it was my decision to do it that way, by

19   ourselves, without anybody else knowing.

20       Q   I'm going to show you what I am marking as

21   Exhibit 1 to the deposition.  Can you tell me what that

22   is?

23       A   The wedding contract, the wedding service

24   contract.

25           (Deposition Exhibit 1 was marked for

Noelia Lorenzo Monge
March 1, 2010

Page 64

1       A    The stolen photographs that were published by

2  the TV Notas.

3       Q    Do you recognize this to be a copy of the

4  article about your secret wedding in --

5            MR. FATTOROSI:  Counsel, there's actually a

6  page missing.  I don't know if you did that on purpose.

7            MR. BOBADILLA:  Yes.

8  BY MR. BOBADILLA:

9       Q    Do you recognize it to be the TV Notas article?

10       A    Yes.

11       Q    I've added numbers to the exhibit so that it's

12  easier to identify each photograph.  Let's turn to

13  picture number 1.  Is that a photograph of you and your

14  husband during your wedding night?

15       A    Yes.

16       Q    Where was that photograph taken?

17       A    At the chapel.

18       Q    Who was at the chapel during your wedding?

19       A    The gentleman who officiated the wedding, the

20  person behind the counter who did all the arrangements

21  and another person who I practically didn't see much.

22       Q    Do you know the names of any of these people?

23       A    No.

24       Q    Who took this photograph?

25       A    The gentleman I mentioned earlier, the one

Noelia Lorenzo Monge
March 1, 2010

Page 65

1  behind the counter who did all the arrangements, I gave

2  him my camera.

3       Q    And it was your camera?

4       A    My camera, yes.

5            MR. FATTOROSI:  Wait for her to translate.  I

6  know you understand English, but I want to keep it in

7  Spanish.

8            THE WITNESS:  (In English.)  Sorry.

9  BY MR. BOBADILLA:

10      Q    What is the brand and make of that camera?

11      A    I'm not sure.  It could be a Sony, Canon -- or

12 I'm not sure.

13      Q    Do you still own that camera?

14      A    Yes.

15      Q    Where is it?

16      A    At home.

17      Q    I'm reading from page 4, line 22 of your

18 complaint, and it states, "The wedding ceremony was

19 private and the only people present were plaintiffs, a

20 minister and a wedding photographer."  Was that

21 statement true?

22           MR. FATTOROSI:  Objection; vague and ambiguous

23 as to time and the place.  I think --

24           Go ahead.  I'm sorry.

25           THE WITNESS:  The people I mentioned, those

Noelia Lorenzo Monge
March 1, 2010

1  were the people that were present.  The person I gave

2  the camera to, I don't know if he was a wedding

3  photographer, but I know that I gave him the camera

4  because I wanted someone to take two or three pictures

5  so that I have a memory of the event.

6  BY MR. BOBADILLA:

7      Q    Let's take it step by step.  Other than you and

8  Mr. Reynoso, were there always three people in the room?

9      A    (In English.)  The place is like this here.

10         MR. FATTOROSI:  Spanish.

11         THE WITNESS:  (In English.)  Sorry, I forget.

12         (Interpreted.)  The place goes like this:  You

13  have a counter here.

14         (In English.)  You enter here, this the

15  counter.

16         (Interpreted.)  You enter here, this is the

17  counter, the person is here who made the arrangements.

18  Here, you have different chapels, and in this one, this

19  is where we got married, and the gentleman was there,

20  the one who officiated the wedding, and the person here

21  who took two or three pictures, and then the person who

22  got us married also took a picture.  And there was a

23  third person that I practically didn't see and he gave

24  us the flowers and things like that.  He wasn't inside.

25  He would kind of like take a peek but he wasn't here all

Noelia Lorenzo Monge
March 1, 2010

Page 67

1    the time.

2    BY MR. BOBADILLA:

3        Q    While you were getting married, was the door

4    closed?

5        A    Yes, we made them keep the place empty.

6        Q    Did you pay extra to keep the place empty?

7        A    I don't know that.  You should ask Jorge.

8        Q    Just so that I understand, the only two people

9    who took pictures other than you and Mr. Reynoso was the

10   gentleman at the counter and the minister?

11       A    Yes.

12       Q    Was there a video camera in the room while you

13   were getting married?

14       A    Not that I know of.

15       Q    Let's go through each of the pictures and I

16   will ask you who took each picture.  Picture number 1.

17       A    This one, I don't know whether it was the

18   minister or the young man at the counter, one or the

19   other.  That was at the end, after the ceremony had been

20   completed.

21       Q    Picture number 2.

22       A    I took that one.

23       Q    Picture number 3.

24       A    Jorge took it.

25       Q    Picture number 4.

Noelia Lorenzo Monge
March 1, 2010

Page 68

1    A    The young man at the counter took it.

2    Q    Picture number 5.

3    A    I'm guessing that it was the young man at the

4    counter or I don't know if it was the minister.  I know

5    the minister took one, but I don't know which one.

6    Q    Picture number 6.

7    A    That was taken at the Playboy Club and it was

8    taken by someone who was working there.  It could be a

9    bartender or the waitress, either/or.

10   Q    Now, there's another picture on the second page

11   which appears to be -- it's a picture of you lying on a

12   bed.

13   A    It was taken by Jorge.

14   Q    Is that the same picture that appears as number

15   3 on the cover?

16   A    Yes.

17   Q    Would you describe the physical appearance of

18   the man behind the counter?

19   A    I don't remember very well, but he had white

20   skin, and he had either dark brown or blond hair,

21   something like that.  I don't remember well.

22   Q    Did he have light hair or dark hair?

23   A    As far as I remember, it was a light brown or

24   blond hair.

25   Q    So light hair?

**Original Transcript**

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA
GENERAL JURISDICTION DIVISION

NOELIA LORENZO MONGE and
JORGE REYNOSO,

        Plaintiff(s),

vs.                      CASE NO. 08-41673 CA 15

MAYA MAGAZINES, INC., and
MAYA PUBLISHING GROUP, LLC., et. al.,

        Defendant(s).
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**SWORN STATEMENT OF**

**OSCAR VIQUEIRA**

March 8, 2010
10:07 a.m.

44 West Flagler Street
Fourteenth Floor
Miami, Florida

Gary R. Schwartz



ESQUIRE
an Alexander Gallo Company

Exhibit "E"

Toll Free: 800.211.3376
Facsimile: 305.493.3322

14th Floor
44 West Flagler Street
Miami FL 33130
www.esquiresolutions.com

IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT IN AND FOR
MIAMI-DADE COUNTY, FLORIDA
GENERAL JURISDICTION DIVISION
CASE NO. 08-41673 CA 15

-----------------------------------------------------------

NOELIA LORENZO MONGE and
JORGE REYNOSO,

                    Plaintiff(s),

vs.

MAYA MAGAZINES, INC., and
MAYA PUBLISHING GROUP, LLC., et. al.,
                    Defendant(s).

-----------------------------------------------------------

                    44 West Flagler Street
                    Fourteenth Floor
                    Miami, Florida 33130
                    Monday, March 8, 2010
                    10:07 a.m. - 10:30 a.m.


            SWORN STATEMENT OF
              OSCAR VIQUEIRA


        Taken before Gary R. Schwartz,
    Court Reporter and Notary Public in and for
        the State of Florida at Large,
    pursuant to a Notice of Taking Deposition
        in the above entitled cause.



Toll Free: 800.211.3376
Facsimile: 305.493.3322

14th Floor
44 West Flagler Street
Miami, FL 33130
www.esquiresolutions.com

Oscar Viqueira                                                    March 8, 2010

3

1               I-N-D-E-X

2       Witness:

3       OSCAR VIQUEIRA

4       Direct Examination by: Mr. Bobadilla          Page 4

5

6

7

8

9

10

11

12

13

E-X-H-I-B-I-T-S

14

15      Defendant's Exhibit Number 1          Page  6

16      Defendant's Exhibit Number 2          Page  7

17      Defendant's Exhibit Number 3          Page  8

18      Defendant's Exhibit Number 4          Page 10

19      Defendant's Exhibit Number 5          Page 13

20      Defendant's Exhibit Number 6          Page 14

21      Defendant's Exhibit Number 7          Page 15

22      Defendant's Exhibit Number 8          Page 15

23

24

25



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.211.3376
Facsimile: 305.493.3322

14th Floor
44 West Flagler Street
Miami, FL 33130
www.esquiresolutions.com

Oscar Viqueira                                    March 8, 2010

5

1        A    Yes.

2        Q    And that that oath is the same oath that

3   you would take if you were in a court of law?

4        A    Yes.

5        Q    If I ask you any questions that you don't

6   understand please tell me, and I will try to clarify

7   it.  I'm not here to try to confuse you.  I simply

8   want to ask questions about facts.  Do you understand

9   that?

10       A    Yes.

11       Q    Are you under any medication or anything

12  else that would prevent you from understanding my

13  questions?

14       A    No.

15       Q    And that would prevent you from answering

16  them truthfully?

17       A    No.

18       Q    Do you know the Plaintiff's, Noelia Lorenzo

19  Monge?

20       A    Yes.

21       Q    And Jorge Reynoso?

22       A    Yes.

23       Q    How do you know them?

24       A    I worked as their bodyguard on several

25  occasions.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.211.3376
Facsimile: 305.493.3322

14th Floor
44 West Flagler Street
Miami, FL 33130
www.esquiresolutions.com

7

1      Q     And does invoice reflect services, driving

2   and bodyguard services, that you provided?

3      A     Correct.

4            MR. BOBADILLA:  I'm showing you a

5      document that I'm marking as Exhibit 2 to

6      the sworn statement.

7            (Thereupon, Defendant's Exhibit Number 2

8      was marked for Identification.)

9   BY MR. BOBADILLA:

10     Q     Can you tell me what this is?

11     A     This is a split of the other invoice that

12   was prepared for Noelia Lorenzo and Jorge Reynoso,

13   and they never paid.

14     Q     Is this invoice you're looking at also from

15   Y & J Transport?

16     A     Correct.

17     Q     And does it reflect services that you

18   provided to Plaintiffs?

19     A     Yes, correct.

20     Q     Is it possible that there are more services

21   that you provided that are not on these particular

22   invoices?

23     A     Correct.

24     Q     Now, did Plaintiffs pay Y & J Transport for

25   these service?



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.211.3376
Facsimile: 305.493.3322

14th Floor
44 West Flagler Street
Miami, FL 33130
www.esquiresolutions.com

Oscar Viqueira                                                    March 8, 2010

9

1    says the words in Spanish, "No recuerdo"?

2         A    Yes.

3         Q    What does no recuerdo mean to you?

4         A    The exact date of the services, however

5    that was the date that Noelia came out on the front

6    or the cover of the Maxin Magazine.

7         Q    You stated previously that the Plaintiffs

8    had paid Y & J with worthless checks?

9         A    Correct.

10        Q    Approximately when did that occur?

11        A    On several occasions, but the last one was

12   in 2008.

13        Q    This lawsuit is about several photographs

14   of the Plaintiffs secret wedding in Las Vegas.  Are

15   you aware of that?

16        A    Yes.

17        Q    Have you seen these photographs?

18        A    Yes.

19        Q    Can you tell me how it is that you came to

20   see these photographs?

21        A    On one occasion Jorge Reynoso used my car,

22   the Durango, for one or two days.  A few days after

23   that while I was cleaning the car I found the chip in

24   the ashtray of the car.

25        Q    Would you please describe the chip to which



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.211.3376
Facsimile: 305.493.3322

14th Floor
44 West Flagler Street
Miami, FL 33130
www.esquiresolutions.com

Oscar Viqueira                                                    March 8, 2010

                                        11

1       A     Correct.

2       Q     When approximately did you find this chip?

3       A     I don't know the exact date.

4       Q     In what year?

5       A     2008.

6       Q     When during the year would you say you

7    found it?

8       A     It could have been summertime of 2008.

9       Q     What did you do when you found this chip?

10      A     I checked it out on the computer.

11      Q     And what was on the chip?

12      A     Pictures of Jorge Reynoso's secret wedding

13   in Las Vegas.

14      Q     Were there other photographs on the chip?

15      A     Yes.

16      Q     Were there also videos on the chip?

17      A     Yes.

18      Q     What did you do after you realized that

19   these were photographs of the Plaintiffs?

20      A     I got in touch with Jesus Gutierrez and I

21   told him to tell Jorge that I had the chip.

22      Q     What did Mr. Gutierrez do?

23      A     He called Jorge Reynoso on several

24   occasions.  He asked him for the money that he owed

25   the company for the money that he owed me.  He told



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.211.3376
Facsimile: 305.493.3322

14th Floor
44 West Flagler Street
Miami, FL 33130
www.esquiresolutions.com

Oscar Viqueira                                                    March 8, 2010

13

1        A      It's following any person with a video

2    camera or a camera, usually celebrities, and taking

3    pictures at the right moment and then selling the

4    pictures.  That's a paparazzi's job.

5        Q      Have you ever sold paparazzi photographs to

6    TVNotas Magazine?

7        A      Yes.

8        Q      Now, can you describe for me what you did

9    with these particular photographs?

10       A      Sell them to TVNotas to recuperate the

11   payment for my work.

12       Q      Who did you negotiate this sale with at

13   TVNotas?

14       A      With the magazine's editor.

15       Q      Is that Juan Garcia Alejandro?

16       A      Correct.

17       Q      And approximately when did you engage in

18   these negotiations?

19       A      At the beginning of 2009.

20            MR. BOBADILLA:  I'm going to show you a

21       document which I am marking as Exhibit 5 to

22       your statement.

23            (Thereupon, Defendant's Exhibit Number 5

24       was marked for Identification.)

25   BY MR. BOBADILLA:



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.211.3376
Facsimile: 305.493.3322

14th Floor
44 West Flagler Street
Miami, FL 33130
www.esquiresolutions.com

Oscar Viqueira                                           March 8, 2010

                                    15

1          A     Correct.

2          Q     And is it your recollection that is

3    Juan Garcia Alejandro's signature?

4          A     Correct.

5                MR. BOBADILLA:   I'm handing you a

6          document that I'm marking as Exhibit 7 to

7          your statement.

8                (Thereupon, Defendant's Exhibit Number 7

9          was marked for Identification.)

10   BY MR. BOBADILLA:

11         Q     Do you recognize this document?

12         A     Correct.

13         Q     Can you tell me what it is?

14         A     It's a copy of the check that I was given

15   by Maya Magazines.

16         Q     What is the amount of the check?

17         A     $1,500.

18         Q     Does that represent payment for all of the

19   photographs on the CDs and on the chip?

20         A     Correct.

21               MR. BOBADILLA:   I'm showing you what I

22         have marked as Exhibit 8 to your statement.

23               (Thereupon, Defendant's Exhibit Number 8

24         was marked for Identification.)

25   BY MR. BOBADILLA:



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.211.3376
Facsimile: 305.493.3322

14th Floor
44 West Flagler Street
Miami, FL 33130
www.esquiresolutions.com

Oscar Viqueira
                                                          March 8, 2010

                                    17

1    THE STATE OF FLORIDA,           )

                                     )

2    COUNTY OF MIAMI-DADE            )

3

4           I, the undersigned authority, certify that

5    OSCAR VIQUEIRA, the witness, and NANCY VALLADARES,

6    the interpreter, personally appeared before me

7    and were duly sworn.

8

9

10          WITNESS my hand and official seal this

11   8th day of March, 2010.

12

13                        _Gary R. Schwartz_

                          Gary R. Schwartz

14                        Notary Public - State of Florida

                          Commission Number DD792194

15                        Commission Expires June 29, 2012

16

17

18

19

20

21

22

23

24

25



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.211.3376
Facsimile: 305.493.3322

14th Floor
44 West Flagler Street
Miami, FL 33130
www.esquiresolutions.com

*Migvelow Chofer*

# Invoice

**Date: 10/25/07**

**Y & J TRANSPORT INC.**
130 N.W 68 Ct.
Miami, Fl 33126
Tel: (305)267-8547
Fax: (305)265-4400

**Invoice # 1403**
**PO#**

**To: Jorge Reynoso**
**Re: Noelia**

**From: Jesus A. Gutierrez**
**E.I.D # 65-1078742**

| DATE | DESCRIPTION OF SERVICE | | | SERVICE CHARGE |
|------|------|------|------|------|
| 07/19/07 | Noelia | As directed | 8hrs x $60 | $480 |
| 07/22/07 | Noelia | As directed | 8hrs x $60 | $480 |
| 07/24/08 | Noelia | As directed | 3hrs x $60 | $180 |
| 07/26/08 | Noelia | As directed | 7hrs x $60 | $420 |
| 07/27/07 | Noelia | As directed | 17hrs x $60 | $1,020.00 |
| 07/28/07 | Noelia | As directed | 6hrs x $60 | $360 |
| 07/30/07 | Noelia | As directed | 4hrs x $60 | $240 |
| 07/31/07 | Noelia | As directed | 3hrs x $60 | $180 |
| 09/03/07 | Peter Lopez | As directed | 6hrs x $60 | $360 |
| | | | | |
| | | | | |
| | | **Total Due:** | | **$3,720.00** |

CASH  08-20-08  200.⁰⁰

**THANK YOU FOR USING MY SERVICES.**

Comments:



Exhibit

I

3-8-10 95

ⒺESQUIRE

# Invoice

**Y & J TRANSPORT INC.**
130 N.W 68 Ct.
Miami, Fl 33126
Tel: (305)267-8547
Fax: (305)266-4400

Date:10/26/07

## Invoice # 1403

**To: Noelia**
**Re: Miami Promo**

**From: Jesus A. Gutierrez**
**E.I.D # 65-1078742**

| DATE | DESCRIPTION OF SERVICE | | | | SERVICE HARGE |
|---|---|---|---|---|---|
| 07/19/07 | Noelia | As directed | 12:45pm-8:45pm = 8 hrs | Alberto | $480.00 |
| 07/20/07 | Noelia | As directed | 1:00pm-6:25pm = 5hrs | Jesus | $300.00 |
| 07/21/07 | Noelia | As directed | 10:00am-1:00pm= 3hrs | Oscar | $180.00 |
| 07/22/07 | Noelia | As directed | 2:00pm-10:00pm= 8hrs | Alberto | $480.00 |
| 07/24/07 | Noelia | As directed | 10:00am-6:00pm= 8hrs | Alberto | $480.00 |
| 07/25/07 | Noelia | As directed | 3:00pm-7:00pm= 4hrs | Jesus | $240.00 |
| 07/26/07 | Noelia | As directed | 10:00pm-5:00pm=7hrs | Alberto | $420.00 |
| 07/27/07 | Noelia | As directed | 9:00am-2:00am=17hrs | Alberto | $1,020.00 |
| 07/28/07 | Noelia | As directed | 2:00pm-8:00pm= 6hrs | Alberto | $360.00 |
| 07/29/07 | Noelia | As directed | 11:00am-3:00pm=4hrs | Jesus | $240.00 |
| | | | | **Total Due:** | **$4,200.00** |

**THANK YOU FOR USING MY SERVICES.**

Comments:

*Alberto $2,400.00*
*1,000*
*$2,200.00*
*Fotal 200*

*62 Alben x $40*
*$2,480.00*

*= 1,720*

Exhibit
2
3-8-10   95
ESQUIRE

# Invoice

**Date: 11/25/08**

Y & J TRANSPORT INC.
130 N.W 68 Ct.
Miami, Fl 33126
Tel: (305)297-8547
Fax: (305)265-4400

**Invoice # 1404**
**PO#**

To: Jorge Reynoso
Re: Noelia

From: Jesus A. Gutierrez
E.I.D # 65-1078742

| DATE | DESCRIPTION OF SERVICE | SERVICE CHARGE |
|------|------------------------|----------------|
| 07/30/07 | Noelia    As directed    6:00pm – 10:00pm = 4hrs | $240.00 |
| 07/31/07 | Noelia    As directed    9:00am – 12:00pm = 3hrs | $180.00 |
| No Recuerdo | Oscar    Revista  Maxin entregar en Univision 4hrs | $240.00 |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | **Total Due:** | $660.00 |

**THANK YOU FOR USING MY SERVICES.**

**Comments:**



Exhibit
3
3-5-10  95
ESQUIRE

Exhibit

4

3-8-10 QS

ESQUIRE



Exhibit

3-8-10

ESQUIRE

## ASSIGNMENT OF COPYRIGHT

THIS ASSIGNMENT OF COPYRIGHT ("Assignment") is made and entered into as of the date set forth below by: _Oscar Vigueiras_ ("Artist") to  to Maya Publishing Group LLC, a Florida Limited Liability Corporation with offices at 421 Michigan Avenue, Miami Beach, FL, 33139 ("Assignee")

### WITNESSETH:

Whereas, Artist has prepared one or more artistic works consisting of _over 4100 photos and 3 videos of Jorge Reynoso y Noelia Boda - Party and others_ (the "Works").

Whereas, Artist desires to assign the Works to Assignee.

Whereas, the parties intend for Assignee to be the sole owner of the Works, including all rights of copyright therein.

Whereas, Artist represents and warrants to Assignee that Artist is the sole Artist and creator of the Works (except to the extent that it/they are based upon or incorporate ideas or designs provided by Assignee), and that no third party may claim any rights of copyright therein and that the Works do not infringe the copyrights of another.

NOW, THEREFORE, in consideration for the payment of moneys by Publisher to Artist in a sum equal to or exceeding _$1500 00_ and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Artist does hereby sell, transfer, assign and convey to Assignee, its successors and assigns, any and all right, title and interest in and to the Works (including all revisions, modifications, and additions thereto, now existing or hereafter created), and all copies thereof and all rights of copyright thereto, including the right to apply for, and obtain title to, in all countries of the world, trademark or copyright registrations therefore; and to secure any renewals, reissues and extensions thereof, and all claims or causes of action, whether asserted or not, relating thereto. Artist agrees to indemnify, defend, and hold Assignee harmless from and against any claims or liability resulting from Assignee's use of the Works or any damages resulting from the breach of any representation or warranty of Artist.

IN WITNESS WHEREOF, the parties have executed this Assignment as of the dates set forth below.

Artist

Name: _Oscar Vigueiras_

Date: _01 - 27 - 09_

Maya Publishing Group, LLC.

By: _____

Title: _Editor_

Date: _01/27/09_

Exhibit
6
3 - 8 - 10  QS
ESQUIRE

**MAYA MAGAZINES, INC.**
419 - 421 Michigan Ave.
Miami Beach, FL 33139
(305) 532-0204

CITIBANK, N.A.
Miami Beach, FL 33139
63-6655/2660

8587

2/3/2009

PAY TO THE
ORDER OF _____ Oscar Viqueira                                    $  **1,500.00

One Thousand Five Hundred and 00/100************************************************************ DOLLARS 🔒 ▦

Oscar Viqueira
3626 NE 168 St Apt. 601
North Miami Beach FL 33160

MEMO

⑈008587⑈ ⑆266086554⑆    3 200614833⑈

---

MAYA MAGAZINES, INC.                                                          8587

Oscar Viqueira                                      2/3/2009
DUE TO MPG                Over 400 photos & 3 videos of Jorge Reynoso & Noel          1,500.00

Cash In Citibank                                                              1,500.00

MAYA MAGAZINES, INC.                                                          8587

Oscar Viqueira                                      2/3/2009
DUE TO MPG                Over 400 photos & 3 videos of Jorge Reynoso & Noel          1,500.00

Cash In Citibank                                                              1,500.00

Exhibit

7

3 - 8 - 10  Q

ESQUIRE



▶ ¡Hablamos con el polémico niño torero ¡que mató 6 becerros en 2 horas!

# TV NOTAS ®

Edición USA

¡Semanal e irresistible!

## La boda secreta

de **Noelia** y Jorge Reynoso en Las Vegas

Solo en TVn

**3** Hasta conseguimos fotos de su primera ¡noche de casados!

**Imágenes inéditas**

Solo en TVn

**Laura Flores** ahora adoptó **una niña**

Solo en TVn
La esposa de la nieta lesbiana de Kippy Casado

¡la engaña con otra!

Solo en TVn
Afirma ex esposa de Manzanero: *"Primero las enamora ¡y luego las golpea!"*

**Ahora que su** hijo irá al *college*, **Sofía Vergara** ¡quiere buscar **mar**

Solo en TVn

USA $ 3.29
33
0  20267 13937  9
Display until 2/17   Exhiba hasta Febrero 17

p633 usa prueba 2

Exhibit
8
3-8-10  95
☰ ESQUIRE

asó en Las Vegas en enero de 2007

# y únicas fotos de la boda
## de Noelia y Jorge Reynoso

**POSARON CON EL MINISTRO QUE LOS CASÓ**



Noelia Lorenzo-Monge y Jorge Reynoso lucían felices, ella con un mini vestido stretch y una sexy liga, mientras él vistió de traje y corbata.

**SU PRIMER BESO COMO MARIDO Y MUJER**



Luego de unos años de relación, Reynoso finalmente "le cumplió".

**LUEGO SE FUERON A UN BAR**



**ASÍ TERMINÓ LA CANTANTE EN LA ALCOBA NUPCIAL**



Coqueta, sugerente y feliz como toda esposa en ese día, la cantante pasó lista para la noche de bodas.

Aunque la pareja no ha querido confirmar su matrimonio, estas fotos que conseguimos hablan por sí solas.

TVN xX

UNIVISION.com

**Pilar, naked and affected**
She blames Jorge Reynoso. He defends himself.

**Entertainment**, Univision
Online

May 22, 2006

> ➤ "I thought he was a gentleman"
> ➤ Reynoso defends himself

☐ **Who do you think is to blame?**

On the eve of the imminent publication of photos of Pilar Montenegro naked and in erotic poses, it grew like an avalanche. The news appeared just before the men's magazine *Penthouse*, for which the singer did a sexy photo shoot, hit the newsstands. Almost immediately, Pilar came out to confront the scandal, first by confirming that it is indeed about her and some photos she had taken three years ago, and second, by pointing to her ex-husband, Jorge Reynoso, as the "the only person who could have sold those photos to a magazine."

[Text under photo by F. Cuevas/ Univisión Online:]  Pilar Montenegro confirmed that she did pose three years ago for some photos, but said that she made them for Jorge Reynoso.]

However, in a press release, her ex-husband defends himself and says he is hurt that the former Garibaldi member has gone nuts and questioned his trustworthiness. On the other hand, the director of the magazine also detaches himself from any responsibility by affirming that Jorge Reynoso did not provide those photos and that they have no other interest than paying tribute to Montenegro's beauty. Who do we believe?

**"I thought he was a gentleman"**

[Caption in box entitled "Video":]  **Pilar gave intimate photos to Reynoso**

Interviewed live on the show *Escándalo TV*, Pilar Montenegro acknowledged that she did pose wearing a negligee in a photo shoot approximately three years ago, unable to specify whether the photos were taken in Ft. Lauderdale or West Palm Beach, Florida. What she did confirm categorically was that the person responsible for selling those intimate photos to a publication could be none other than her ex-husband, Jorge Reynoso.

Pilar began by saying "I thought he was a gentleman, but now I see that he's not," referring to her ex-husband.

"I am extremely hurt; those were personal photos. I always posed in lingerie; those nude photos, I am sure the clothing was removed by computer," stated the singer, at the same time she said that the photographs were taken, at Jorge's own request, by an American photographer who didn't know who Pilar was, somewhere in Ft. Lauderdale or West Palm Beach.

*Composite Exhibit "F"*

Certified Translation

①

The voice of the former Garibaldi member began to break as the interview continued, until she couldn't stop herself from crying. "I am very stressed. My entire family has been hurt. We were just fooling around. I'm sure it was him (Jorge Reynoso). If you check, I have always spoken well of him in all interviews. And, the truth is, he has done just the opposite, and that makes me very sad."

**-What would you say to him?, Charityn asked.**
"I would tell him that I am very fond of him and that he is doing me a lot of harm. That it was a lovely five-year relationship and I wish him the best, but that he should leave me alone."

Almost in passing, Pilar revealed that the change in Jorge Reynoso's attitude towards her began when she posed for *Penthouse* magazine, since the first criticism she received was from him, when the men's magazine had not yet come out.

**-Is Reynoso jealous? Does he still love you?**
"I don't know. We used to get along very well even though he began to date Noelia quite soon. I waited a year. Just when I started my relationship, [Reynoso] started with this."

**-Why did you hire a photographer?**
"Actually it was his idea; an American who didn't even know who I was. It was fun, very erotic and they were photos for our album."

**-When the two of you separated, didn't you ask him to return the photos, the negatives?**
"No, because I thought he was a gentleman. Men must respect women, and even more so in the case of an ex-wife!





Publicidad / Advertise Here

Univision.com   Vidas Cruzadas   Premios Juventud   ▼ Servicios          ▼ Comunidad   Ingresa · Inscríbete

**UNIVISION.com**   Videos   Mi Página   Foros   Chat   Correo   Móvil   Compras     ⊙ Univision ○ Internet   [            ] buscar

| Autos | Casa | Deportes | Dinero | Entretenimiento | Mujer | Música | Noticias | TV | Vida |

Chismes   Cine   Famosos   Sexis   TVnotas   Reinas de Belleza   Radio   Juegos   Tonos   Foros

Chismes > **Escándalos**

👥 Comparte esta página   ✉ Enviar   🖨 Imprimir

## Pilar desnuda y afectada
### Culpa a Jorge Reynoso. El se defiende

Entretenimiento, Univision
Online
22 de Mayo de 2006

▶ "Yo pensé que era un caballero"
▶ Reynoso se defiende

▦ ¿Quién crees que tiene la culpa?

En la víspera, creció como avalancha la inminente publicación de fotografías de Pilar Montenegro desnuda y en poses eróticas. La noticia apareció justo antes de que circule la revista para caballeros *Penthouse*, donde la cantante hizo una sesión de fotos sexis. Pilar salió casi de inmediato a enfrentar el escándalo, primero confirmando que sí se trata de ella y unas imágenes que se hizo hace tres años y, segundo, para señalar como responsable a su ex marido, Jorge Reynoso, como "la única persona que pudo haber vendido esas fotos a una revista".

Sin embargo, a través de un comunicado, su ex esposo se defiende y se dice lastimado porque la ex garibaldi haya perdido la cabeza y dudara de su confianza. Por su parte, el director de la revista también se deslinda de la



F.Cuevas/Univisión Online
Pilar Montenegro confirmó que ella sí posó hace tres años para unas fotos, pero dijo que las hizo para Jorge Reynoso.

**Lo Más Comentado**

▶ Piden la destitución de Stefanía Fernández, Miss Universo 2009.
📷 24 hoy

▶ Participantes de Miss Universo 2009 en desacuerdo con la elección
📷 12 hoy

▶ Laura Zapata dijo no saber nada de lo que pasa en la vida de Thalía y Camila Sodi
📷 8 hoy

▶ William Levy y otros famosos han sido expuestos en fotografías muy candentes
📷 7 hoy

▶ Seguidores de los certámenes de belleza afirman que Stefanía Fernández está "gorda".
📷 4 hoy

**Enlaces Relacionados**

▶ Sospechan de Britney
▶ Enrique ¡demandado!
▶ Todo el peso de la ley
▶ Noelia defiende a Reynoso
▶ Pepe pide disculpas a papá José

▦ Todo de Pilar Montenegro
▦ Pilar se desnuda para **Penthouse**

**Fotos** ⦿



Estrepitosa caída de Amy

responsabilidad al afirmar que Jorge Reynoso no brindó
esas fotos, ni tienen mayor interés que rendir un tributo a la
belleza de la Montenegro. ¿A quién le creemos?

**"Yo pensé que era un caballero"**

Entrevistada en vivo por el programa
*Escándalo TV*, Pilar Montenegro
reconoció que sí posó en negligé en
una sesión de fotos hace unos tres
años aproximadamente, sin poder
precisar si fueron hechas en Ft.
Lauderdale o West Palm Beach,
Florida. Lo que sí confirmó categórica, fue que el
responsable de vender esas fotos íntimas a una
publicación, no podía ser otro que su ex esposo Jorge
Reynoso.



Pilar regaló
fotos íntimas a
Reynoso

"Yo pensé que era un caballero, ahora veo que no",
comenzó diciendo Pilar refiriéndose a su ex esposo.



Pilar al natural

"Estoy súper dolida, esas eran unas
fotos personales. Lo hice siempre en
lencería, esas fotos desnuda, estoy
segura que me quitaron la ropa con
computadora", aseguró la cantante, al
tiempo en que dijo que las fotografías
las hicieron a petición del propio Jorge, con un fotógrafo
americano que no sabía quién era Pilar y en algún lugar de
Ft. Lauderdale o West Palm Beach.

La voz de la ex Garibaldi comenzó a quebrarse conforme
avanzaba la entrevista, hasta el punto de no poder evitar el
llanto: "Estoy muy estresada, han lastimado a mi familia, era
una travesura que quisimos hacer. Estoy segura que fue él
(Jorge Reynoso). Si te fijas, en todas las entrevistas
siempre habló bien de él. Y él, la verdad ha hecho todo lo
contrario y estoy muy triste".

-¿Qué le dirías?, preguntó Charityn.
"Yo le diría que le tengo mucho cariño y que me está
haciendo mucho daño. Que fue una relación linda de cinco
años, que le deseo lo mejor pero que ya no se meta
conmigo".

Casi por inercia, Pilar reveló que el cambio de actitud
de Jorge Reynoso hacia ella comenzó cuando ella posó pra
la revista *Penthouse*, pues las primeras críticas que recibió



fueron de él, cuando aún no salía a la venta la publicación para caballeros.

**-¿Reynoso está celoso? ¿Te sigue queriendo?**
"Yo no sé. Nos llevábamos bien a pesar de que él empezó a salir con Noelia bien pronto. Yo tardé un año. Apenas empecé mi noviazgo y él empezó con esto".

**-¿Por qué contrataron a un fotógrafo?**
"Realmente se le ocurrió a él. Un americano que no sabía ni quién era yo. Estuvo divertido, fue muy erótico y eran unas fotos para nuestro álbum.

**-Cuando te separaste, ¿no le pediste que te devolviera las fotos, los negativos?**
"No, porque yo consideraba que él era un caballero. Los hombres tienen que respetar a las mujeres, y más aún si se trata de su ex esposa".

Página: 1 | 2



**Promoción**

## Saborea lo mejor de la cocina latina aquí.

**Tu Opinión**

¿Quién crees que tiene la culpa?

**En tu Móvil**

▶ Recibe todo sobre entretenimiento de tu país en tu móvil. Entérate como.

▶ Personaliza tu móvil con los tonos del momento. ¡Todos tus artistas favoritos están aquí!

**Enlaces Patrocinados**                        Vea su anuncio aquí

Fotos Y Videos Free
Find more sources/options for what your looking for
www.webcrawler.com



ProTranslating

## CERTIFICATE OF ACCURACY

The undersigned, Dr. Luis A. de la Vega, Chairman of ProTranslating, appearing on behalf of ProTranslating, hereby states, to the best of his knowledge and belief, that the foregoing is an accurate translation of the attached original document in the _____ Spanish _____ language, consisting of __3__ pages, and that this is the last of the attached.

13

_____

Luis A. de la Vega, Ph. D.
Chairman
For ProTranslating


State of Florida
County of Miami-Dade

The foregoing certificate was acknowledged before me on this __9th__ day of __March__, __2010__, by Dr. Luis A. de la Vega, Chairman of ProTranslating, a Florida corporation, on behalf of the corporation. He is personally known to me.


_____
Notary Public

My commission expires:

ROSANNA GAVAZZI
Notary Public - State of Florida
My Commission Expires May 6, 2012
Commission # DD 786399
Bonded Through National Notary Assn.



44 W. Flagler St., Ste. 1800 Miami, Fl 33130  Ph: 305.371.7887  Fax: 305.371.8366
www.protranslating.com

MPG 00491

**It is said that he got them through the Internet**

## It seems that Pilar Montenegro and her husband Jorge Reynoso have separated over some photos in which she appears completely in the nude!

[Text above photograph:]
*THE PHOTOS WERE TAKEN 2 YEARS AGO, BUT SHE NEVER TOLD JORGE, WHO AT THAT TIME WAS ALREADY HER BOYFRIEND*

According to strong rumors running through some media, Pilar Montenegro and Jorge Reynoso have become estranged, and although no divorce petition has been filed by either one of the parties, everything seems to indicate that the impresario has stopped managing the singer's career. *TVnotas* investigated and we found out that, in fact, they have separated professionally due to a series of personal situations that have seriously affected the relationship.

### THEY WERE BEING VALUED AT THOUSANDS OF DOLLARS

A few weeks ago, compromising photos of Pilar Montenegro showed up on the Internet and were being valued at thousands of dollars, in which the former Garibaldi member appears completely nude.
The singer had those photos taken more than two years ago, but at the time she was already romantically involved with her manager, Jorge Reynoso, although she never told him openly that she had done this sexy series of photos.

### HE RECEIVED THEM FROM AN ANONYMOUS SOURCE

However, the impresario recently received some of the photos anonymously through the Internet, and he was asked to pay 5 thousand dollars per photo (almost 30 thousand) to keep them from being made public.
Logically, Pilar's husband started to negotiate the purchase to avoid a scandal; nonetheless, some of them reached the editorial room of *TVnotas,* but we decided not to publish them out of respect for the singer.

### PILAR WANTED TO BUY THEM TO DESTROY THEM

In those photos, the singer appears with her face blacked out and blurred, but her body is fully exposed.
It is rumored that the main reason for the couple's estrangement is that Pilar was trying to buy the photos on her own, in order to destroy them, not knowing that Jorge, on his end, was also negotiating to obtain them.
Due to this confusion and perhaps to the lack of communication between them, up until the time this note was written, they have decided to cease the working relationship between them, putting their love life in a very precarious situation. Perhaps this mess will keep them separated for some time.

*According to rumors, the person who sent the photos to the impresario was asking him over 5 thousand dollars for them!*

MPG 00509

### Dicen que él las recibió por internet

# ¡Parece que Pilar Montenegro y su esposo Jorge Reynoso están separados por unas fotos en las que ella aparece ¡completamente desnuda!



**ELLA SE TOMÓ LAS FOTOGRAFÍAS HACE 2 AÑOS, PERO NUNCA LE DIJO A JORGE, QUIEN EN ESE TIEMPO YA ERA SU NOVIO**

Por Cristóbal Franco

*Aunque ya iban a cumplir dos años de matrimonio, todo parece indicar que Jorge Reynoso y Pilar Montenegro se han separado.*

**S**egún fuertes rumores en algunos medios de comunicación, Pilar Montenegro y Jorge Reynoso se han distanciado, y aunque todavía no existe una petición de divorcio por alguna de las partes, todo indica que el empresario ha dejado de manejar la carrera de la cantante. *TVnotas* investigó al respecto y comprobamos que, en efecto, ellos se han separado profesionalmente; esto debido a una serie de situaciones personales que afectaron seriamente la relación.

### SE COTIZABAN EN MILES DE DÓLARES

Hace algunas semanas empezaron a circular en internet imágenes comprometedoras de Pilar Montenegro, las cuales se cotizaban en miles de dólares y en las que la ex garibaldi aparece completamente desnuda.

Hace más de dos años que la cantante se tomó estas fotografías, pero en esa época ya mantenía una relación sentimental con Jorge Reynoso, quien era su mánager, aunque nunca le confesó abiertamente que se había realizado este estudio tan sexy.

### LAS RECIBIÓ DE MANERA ANÓNIMA

Sin embargo, hace poco el empresario recibió de manera anónima y por internet, algunas de estas imágenes y le pidieron 5 mil dólares por cada una (son casi 30), para así evitar que salieran a la luz pública.

Como es lógico, el esposo de Pilar comenzó a negociar la compra, para evitar un escándalo, sin embargo, algunas de ellas llegaron hasta la Redacción de *TVnotas*, pero decidimos no publicarlas por respeto a la cantante.

### PILAR LAS QUERÍA COMPRAR PARA DESTRUIRLAS

En dichas imágenes, la cantante aparece con el rostro tachado y borrado, dejando su cuerpo al descubierto.

La razón principal que llevó a la pareja a distanciarse, según los rumores, fue que Pilar, por su parte, buscaba comprar las fotos para destruirlas, sin saber que Jorge, por su lado, también negociaba para obtenerlas.

Debido a esta confusión y tal vez a la falta de comunicación entre ellos, hasta el momento de escribir esta nota, ambos decidieron suspender la relación de trabajo que llevaban, dejando en una situación muy delicada su vida amorosa. Quizá este enredo los mantendrá separados por un tiempo. [tv]

*Según rumores, la persona que le envió las fotos al empresario le pedía ¡más de 5 mil dólares por ellas!*

MPG 00510



## ProTranslating

### CERTIFICATE OF ACCURACY

The undersigned, Dr. Luis A. de la Vega, Chairman of ProTranslating, appearing on behalf of ProTranslating, hereby states, to the best of his knowledge and belief, that the foregoing is an accurate translation of the attached original document in the _____Spanish_____ language, consisting of ___1___ pages, and that this is the last of the attached.

(52)

Luis A. de la Vega, Ph. D.
Chairman
For ProTranslating

State of Florida
County of Miami-Dade

The foregoing certificate was acknowledged before me on this __9th__ day of __March__, __2010__, by Dr. Luis A. de la Vega, Chairman of ProTranslating, a Florida corporation, on behalf of the corporation. He is personally known to me.

Notary Public

My commission expires:

ROSANNA GAVAZZI
Notary Public - State of Florida
My Commission Expires May 6, 2012
Commission # DD 786399
Bonded Through National Notary Assn.



44 W. Flagler St., Ste. 1800 Miami, Fl 33130  Ph: 305.371.7887  Fax: 305.371.8366
www.protranslating.com

MPG 00511

http://www.terra.com/ocio/articulo/html/oci204453.htm

**Noelia's Porn Video in the hands of the FBI**
**10/17/2007 – 20:11 (GMT)**



The Federal Bureau of Investigation (FBI) has a video in its possession in which Noelia, the Puerto Rican singer, appears having sexual intercourse with rapper Yamil.

Puerto Rican producer Topy Mamery, the singer's stepfather and former promoter, delivered the evidence to the FBI on Wednesday, in the hopes that the Bureau will investigate whether a crime was committed when the video of Noelia was broadcast on the Internet. The two have been engaged in an ongoing dispute ever since the singer refused to continue under his musical guidance.

Noelia has said that she had been abused by her stepfather, without specifying how, and **has accused him of distributing the video.** Mamery, on the other hand, has pointed to the singer's current agent and boyfriend, Jorge Reynoso, as being the one responsible.

"This has been part of the strategy from day one," he said. "The same week they accused me ... this man (Reynoso) set up a website selling the video of Noelia."

Accompanied by his assistant Alexis Gruilón, who is his stepdaughter's ex-boyfriend and a former member of the group MDO, **Mamery went to the FBI and delivered evidence that includes the results of a preliminary investigation** conducted by a company experienced in tracking down people who obtain domains on the web, which he commissioned, and which supposedly revealed that Reynoso had distributed the video.

"I believe it was my duty as a citizen, as Noelia's father, and also as a responsible person, to bring information that I have in my possession and put it in the hands of the authorities so that they may proceed with it if they deem it advisable," said the husband of singer Yolandita Monge, Noelia's mother.

"I expect and hope that justice will be done and that criminal charges will be brought, of course," said Mamery, who believes that **the potential violations committed are of a federal**, because of the laws regulating pornography.

He added that he hopes the federal investigation requested of the FBI will not affect his stepdaughter and said he doesn't know whether she was involved in the distribution of the video.

"I hope and pray that Noelia had nothing to do with this," he said.

*Terra / AP*





CANALES Y SERVICIOS

PORTADA   ARTISTAS   GÉNEROS   FOTOS   ESPECIALES   TOP 10   RADIO   VIDEOS   PREMIOS TERRA   NOTICIAS   ENTRETENIMIENTO

BUSCA                                                     En Terra

Sólo a mayores

# Video porno de Noelia en manos del FBI
**17/10/2007 - 20:11(GMT)**

MPG 00494

Comparte    Imprimir    Newsletter    Widget

El Buró Federal de Investigaciones (FBI) tiene en sus manos un video en el que aparece la cantante puertorriqueña Noelia teniendo relaciones sexuales con el rapero Yamil.



*Noelia (Sito Oficial)*

El productor boricua Topy Mamery, padrastro y ex promotor de la cantante, entregó el miércoles la evidencia al FBI con la esperanza de que se investigue si se cometió algún delito al difundirse en Internet el video de Noelia, con quien mantiene una prolongada controversia desde que la artista se negara a seguir bajo su tutela musical.

## Noticias Relacionadas

Noelia quiere con Jenni Rivera
Reprocha Noelia discriminación a mexicanos por la influenza.
Se disculpa Noelia pro enfrentamiento de su esposa con reportero
Noelia arrasa en ventas en todo México

+ noticias

## Fotos



Noelia
Latina super
sexy!



Panama
¡Muy Sexy!...



Shakira
Con su show en
Egipto



Noelia fotos
exclusivas

+ fotos

Noelia ha dicho que su padrastro abusó de ella, sin especificar de qué modo, y lo ha acusado de difundir el video. Mamery, por su parte, ha señalado al actual apoderado y novio de la cantante, Jorge Reynoso, como el responsable.

"Eso es parte de la estrategia que hubo desde el día número uno que sucedió esto", dijo. "La misma semana que me acusan ... este señor (Reynoso) abre un 'website' donde vende el video de Noelia".

Acompañado por su asistente Alexis Grullón, ex novio de su hijastra y otrora miembro de la agrupación MDO, Mamery acudió al FBI y presentó evidencia que incluye los resultados de una investigación preliminar que encomendó a una compañía experta en rastrear personas que adquieren dominios en la red, y que supuestamente reveló que Reynoso difundió el video.

"Yo creo que era mi deber como ciudadano, como padre de Noelia, como persona responsable traer la información que yo tengo en mi poder a la mano de la justicia y que ellos se encarguen de procesarla si ellos entienden que es conveniente", dijo el esposo de la cantante Yolandita Monge, madre de Noelia.

"Yo espero, aspiro que se haga justicia y que haya cargos criminales, por supuesto que sí", manifestó Mamery, quien cree que las posibles violaciones cometidas son de carácter federal por leyes que regulan la pornografía.

Añadió esperar que la pesquisa federal solicitada al FBI no afecte a su hijastra, y dijo desconocer si ésta tuvo participación alguna en la difusión del video.

"Yo aspiro, pretendo y quiero que Noelia no tenga nada que ver con esto", expresó.

Terra/AP

## Videos

Busca por Videos





El Bombón Asesino
(cumbia-reggaeton) - Nivel
Conda

Como Duele - Noelia

El Bombón Asesino
(Dance) - Nivel Conda

+ videos

Artes | Cine | Deportes | Entretenimiento | Música | Noticias

## Radio

Listed by matchbox twenty in Magic Radio

## Ads by Google

Noelia Video Ardiente
Buy Noelia Video Ardiente up to 50%
cheaper on best-price.com
www.DVDs-Videos.best-price.com

hotel noelia playa
¿Buscas hotel noelia playa?Consigue
Mejores Resultados con ASK
www.Ask.com

Noelia Video Casero
Relájate y mira un VideoY mucho más.
Peeplo.com/Video

Artistas: Alejandro Fernández | Alejandro Sanz | Belanova | Beyoncé | Belinda | Bon Jovi | Britney Spears | Café 13 | Chayanne | Daddy Yankee | Don Omar | Elvis Crespo | Enrique Iglesias | Franco de Vita | Gloria Trevi | Jennifer Lopez | Juan Luis Guerra | Lenny Kravitz | Nivel Conda | Pablo Montero | RBD | Ricky Martin | Shakira | Wisin Y Yandel

Conoce Terra en otros países | Haz de Terra tu Homepage | Mapa del Sitio | Privacidad | Aviso Legal | © Copyright 2010, Terra Networks

MPG 00495



## ProTranslating

### CERTIFICATE OF ACCURACY

The undersigned, Dr. Luis A. de la Vega, Chairman of ProTranslating, appearing on behalf of ProTranslating, hereby states, to the best of his knowledge and belief, that the foregoing is an accurate translation of the attached original document in the _____Spanish_____ language, consisting of __2__ pages, and that this is the last of the attached.                                                    (27)


_Luis A. de la Vega, Q.O._

Luis A. de la Vega, Ph. D.
Chairman
For ProTranslating


State of Florida
County of Miami-Dade

The foregoing certificate was acknowledged before me on this _9th_ day of _March_, _2010_ by Dr. Luis A. de la Vega, Chairman of ProTranslating, a Florida corporation, on behalf of the corporation. He is personally known to me.


Notary Public

My commission expires:

ROSANNA GAVAZZI
Notary Public - State of Florida
My Commission Expires May 6, 2012
Commission # DD 786399
Bonded Through National Notary Assn.



44 W. Flagler St., Ste. 1800 Miami, Fl 33130  Ph: 305.371.7887  Fax: 305.371.8366
www.protranslating.com

MPG 00496

10.23.2007, 11:50 PM

**Topy Mamery discovers who is responsible for leaking the Noelia Video**

San Juan, PR: The Bomb Explodes

After months of back and forth bickering, defamations and everyone witnessing the largest media manipulations ever in Latin American show business, today it has been proven, beyond all reasonable doubt, who is responsible for having published, distributed and sold Noelia's porn video.

An investigation by a firm of experts in cyber-crimes determined that the owner of the noeliashop.com web site and the one who receives money generated by the video directly into his personal bank account is Jorge Reynoso, Noelia's husband.

The investigation shed light on countless pieces of evidence identifying Jorge Reynoso and Noelia as the ones who made up the whole video mess, not only to get publicity for her new album, but also to tarnish the reputation of Mr. Topy Mamery and his entire family.

All the evidence is in the hands of the FBI, which is corroborating the information obtained by the private investigators, to then proceed with the arrest of Jorge Reynoso for violating federal criminal code, specifically 18 USC 2257, which regulates pornography on the Internet.

Besides federal legal action, Mr. Mamery this afternoon sued Jorge Reynoso and his wife Noelia for the sum of 15 million dollars ($15,000,000).

All this evidence, in its entirety, will soon be given to the press.


\*\*\* Tony Mamery is the owner of the station Reggaeton 94 in PR

Here is the complaint in the attachment.

\* Here is the link to the complaint, for downloading





MPG 00497

## JORGE REYNOSO THREATENS REPORTER FROM PAPARAZZI TV

[photo]
Caption: Jorge Reynoso threatened the reporter from Paparazzi TV. Photo: Grosby Group

**Furious, he tried to prevent the reporter from doing her job and called her all kinds of names....**

MIAMI, DECEMBER 10, 2008.- **Jorge Reynoso**, Noelia's current companion, verbally attacked **Roxana Choreno**, a reporter for the program *Paparazzi TV*, and issued threats against **Mega TV.**

The altercation occurred in Mexico City, during the launch of Noelia's most recent album, where Reynoso discovered the **Paparazzi TV** microphone at a press conference, becoming aggressive, and attacking and insulting the show's reporter.

The threats were caught on tape and then broadcast on various entertainment news shows in Latin television.

Jorge Reynoso, manager and partner of Puerto Rican singer Noelia, threatened, insulted and attacked **Mega TV**, and the program **Paparazzi TV**. **Roxana Choreno** was violently forced to remove the microphone and turn off the camera, while he insulted not only the **Paparazzi TV** show, but also **Mega TV**, due to his hostility towards Noelia's stepfather, Carlos "Topy Mamery", who works for **Spanish Broadcasting System** in Puerto Rico.

**Reynoso** also urged the other media covering the news to boycott Roxana's work, removing her from the room.

Lastly, **Jorge Reynoso** threatened the reporter and said he would "settle the score" with her and her family.



LA CRÓNICA DE HOY

**Jorge Reynoso and reporter exchange blows**

Notimex I Espectáculos          Friday, January 16, 2009 I Time created: 19:11 I Last modification 19:11

What started out as a simple event for Pita Ojeda, the singer Noelia, and the producer Roberto Romagnoli, to set down their handprints, deteriorated into a confrontation, first verbal and then physical, between Jorge Reynoso, the singer's husband, and a television reporter.

Initially, the tardiness of the singer and the television producer annoyed some of the media representatives, who insisted with the organizers in having Noelia come to the pavilion where dozens of fans had been waiting patiently for her for hours.

It seems that Noelia was waiting for the arrival of Roberto Romagnoli, the producer of "Hoy" and "Muévete", before going to the pavilion.

After having stamped their handprints, Noelia and Romagnoli posed for dozens of photographers. Immediately thereafter, television cameras were allowed in to conduct interviews with the singer.

However, things became more and more heated with certain questions, especially the ones referring to the video showing her engaging in sexual intercourse.

Noelia was upset and said this was in the past; the situation also annoyed Jorge Reynoso, who told off the reporter.

Members of security at the venue prevented the confrontation from ending up in an all-out brawl, but once again, the crowding of the media around the reporter and Reynoso made Noelia cry, who was then unable to answer any more questions.

Later, Noelia took the microphone and thanked the press and the audience, who found it difficult to believe what had just happened in the pavilion, where a few minutes earlier everything had been very cordial.

Shielding the singer, the organizers managed to get her to a limousine waiting on the Plaza Galerías ramp, where Jorge and the reporter met again and kept hurling warnings at each other.

The limo continued to be surrounded by cameras, microphones and curious bystanders, who followed it until it left the venue and got on the Circuito Interior [expressway] toward the hotel where the couple were staying, who will be traveling to Los Angeles, California, in the morning, where they had several commitments, after which they would return to Mexico City.

Sgf



MPG 00499



54

MrKiller
Forum Colaborador

Fecha de Ingreso: Feb 2004
Mensajes: 11,320

Topy Mamery Descubre El Culpable De Tirar El Video De Noelia!!!

San Juan, PR.: Explota La Bomba

Luego de meses de dimes y diretes, de difamaciones y de todos ser testigos de la manipulación de medios mas grande que se haya visto antes en la farándula latinoamericana, hoy se prueba mas allá de toda duda razonable, quien es el responsable de haber publicado, distribuido y vendido el video pornográfico de Noelia.

Una investigación por una firma de expertos en crimes cybernéticos determinó que el dueño de la página noeliashop.com, y el que recibe el dinero generado por la venta del video directamente a su cuenta de banco personal, lo es Jorge Reynoso esposo de Noelia.

La investigación arrojó luz a un sinumero de evidencia que identifica a Jorge Reynoso y a Noelia como los que se inventaron todo el lio del video para no tan solo obtener publicidad para su nuevo disco, sino para tambien dañar la reputación del Sr.Topy Mamery y de su familia completo.

Toda la evidencia esta en manos del FBI, el cual se encuentra corroborando toda la información obtenida por los investigadores privados, para asi proceder con el arresto de Jorge Reynoso por violación al código penal federal 18 USC 2257 el cual regula la pornografía en el internet.

Ademas de la acción legal federal, el Sr.Mamery demandó en la tarde hoy al Jorge Reynoso y su esposa Noelia por la suma de 15 millones de dólares.($15,000,000)

Toda esta evidencia, integra y completa, será pronto entregada a toda la prensa.

Descarga la barra de herramientas

Incluye desinstalador

Requisitos del sistema:
Windows, Mac, Linux

Otras versiones:
Internet Explorer
Safari

Privacidad

***Topy Mamery es el dueño de la emisora Reggaeton 94 en PR

Aqui esta la demanda en el attachment

*aqui la demanda en un link para q la puedan bajar

RapidShare: 1-Click Webhosting

Archivos Adjuntos
(337.5 KB (Kilobytes), 12 visitas)

MPG 00500

## AFFIDAVIT OF CUSTODIAN OF RECORDS OF

## WE'VE ONLY JUST BEGUN WEDDING CHAPEL, INC.

STATE OF NEVADA         )
                           ) ss

COUNTY OF CLARK         )

I, Diane Danekas, who after being first duly sworn deposes and says:

1.     I am the Custodian of Records for We've Only Just Begun Wedding Chapel, Inc.

2.     It is my understanding that an action entitled <u>Lorenzo Monge v. Maya Magazines, Inc., et al.</u>, CV09-5077JSL (SSx) pending in the United States District Court, Central District of California, involves photographs taken at the Little White Wedding Chapel on January 2, 2007, at the wedding of Mr. Jorge Reynoso and Ms. Noelia Lorenzo Monge.

3.     I have reviewed the company's original corporate documents related to this wedding and have made or caused to be made a true and exact copy of them and that the reproduction of them attached hereto is true and complete.

4.     The originals of these records were made at or near the time of the acts, events, conditions, or opinions, recited herein by or from information transmitted to me by a person with knowledge in the course of a regularly conducted activity in I am engaged at the office while in the employ of We've Only Just Begun Wedding Chapel, Inc.

5.     Based upon my review of the company's records, Reverend Charles D. Robinson, Mr. Jerry Warrell, and Mr. Thomas Gaspar were employees of We've Only Just Begun Wedding Chapel, Inc. at the time of the wedding and were the only people, in addition to Mr. Jorge Reynoso and Ms. Noelia Lorenzo Monge, who were present in the room on January 2, 2007.

6.     The records being produced herewith are as follows:

MPG 00547

*Exhibit " 6 "*

   a.   Copyright Assignment executed by We've Only Just Begun Wedding Chapel, Inc. on March 5, 2009;

   b.   Wedding Service Contract entered into between We've Only Just Begun Wedding Chapel, Inc. dba The Little White Wedding Chapel, Inc. and Mr. Jorge Reynoso and Ms. Noelia Lorenzo Monge;

   c.   Redacted copy of Reverend Charles David Robinson's employment file;

   d.   Redacted copy of Thomas Gaspar's employment file;  and

   e.   Redacted copy of Jerry Warrell's employment file.

I declare under penalty of perjury that the foregoing is true and correct.



Diane Danekas

SUBSCRIBED AND SWORN to before me this
29 day of January, 2010.

*Charlotte Richard*

NOTARY PUBLIC in and for said County and State

NOTARY PUBLIC
STATE OF NEVADA
County of Clark
CHARLOTTE RICHARD
Appt. No. 08-6585-1
My Appt. Expires Feb. 2, 2012

2

MPG 00548

## PHOTOGRAPHER POLICY ACKNOWLEDGMENT

I, _Thomas Gasper_____, Photographer employed by "We've Only Just Begun" dba "Little White Wedding Chapel" understand that in the event the photographs I take are not of good quality, are blurry or out of focus or my camera malfunctions and the customer requests a refund, I am responsible for the amount of money refunded to the customer. Therefore, I give consent to deduct from my wages any monies refunded as a result of any problem that may arise pertaining to the photographs I take.

All Photographs taken by and for "We've Only Just Begun" dba "Little White Wedding Chapel" are strictly confidential and are the sole property of "We've Only Just Begun" dba "Little White Wedding Chapel". At no time are you allowed to take photographs on a personal or purchased camera of any type (digital, video or otherwise) nor are you allowed to use personal digital camera cards. At no time are you allowed to download, print, save or copy any photographs to a personal camera of any type (digital, video or otherwise), nor are you allowed at any time to download, print, save or copy any photographs to a computer, disk, external media card or digital camera card. At no time are you allowed to use your personal cameral equipment pertaining to photographs or videos (still or live) to take photographs of any customers, guests, brides, grooms or staff members. You are not allowed to use any photographs taken by or for "We've Only Just Begun" dba "Little White Wedding Chapel" for your own personal portfolio or credibility nor are you to use any photograph, video or otherwise for your personal gain. If you have any photographs, videos or otherwise at this time you must return them to the company, "We've Only Just Begun" dba "Little White Wedding Chapel" and it is not to be used in any way nor are you allowed to keep, purchase or produce any photograph, (digital, video or otherwise) for any customer, guest, party or staff member.

If a couple asks you at any time to take a photograph of them with their own camera or equipment, they must first sign a release stating that they will not hold us responsible for the quality of any photographs taken with their own camera or equipment.

I _Tomas Gasper_____, understand that I am not allowed to bring any attachment or external media storage that would allow me to download, keep or back up any photographs that I take.

When you take any photographs for "We've Only Just Begun" dba "Little White Wedding Chapel" of any bride, groom, guest, party or staff member for marketing purposes, be it website, literature, brochure or publicity, you must first have it approved by the president of the company, Charolette Richards. As well, you must have each individual who will be photographed, videoed or otherwise sign the "Publicity Release" prior to taking any photograph, video or otherwise.

I _T. Gasper_____, Photographer employed by "We've Only Just Begun" dba "Little White Wedding Chapel" hereby understand, acknowledge and agree to return any and all past photographs (digital, video or otherwise) that I have taken of any bride, groom, guest, party or staff member on or off property and will follow all of the above conditions. Failure to adhere to the above conditions will result in disciplinary action up to and including termination.

Dated this 20 day of August, 2007.

_____
Witness Signature

_____
Witness Printed Name

MPG 00577

_Exhibit "H"_