UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

NOELIA LORENZO MONGE, et al.,

    Plaintiffs,

vs.

MAYA MAGAZINES, INC, et al.,

    Defendants.

CASE NO. CV 09-5077-R

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

**FINDINGS OF FACT**

1. Maya is the publisher of TV NOTAS USA ("TVNotas"), a weekly magazine focusing primarily on newsworthy Latin American personalities. (Declaration of Ana Laura Rivaroli ("Rivaroli Decl.") at ¶ 3.) Maya Magazines is the former publisher of TVNotas. (Rivaroli Decl. ¶ 4, 16.) TVNotas features news articles on popular celebrities and includes stories regarding their marriages, love affairs, careers, and other significant events. (Rivaroli Decl. ¶ 5.) The magazine is distributed in and around the United States, particularly in those regions with significant Hispanic populations. (Rivaroli Decl. ¶ 6.)

2. Plaintiffs Noelia Lorenzo Monge and Jorge Reynoso ("Monge and Reynoso") are

popular Hispanic celebrities. (Rivaroli Decl. ¶ 7.) Plaintiffs allege in their Complaint that Monge is an internationally renowned pop singer and model, and Reynoso is one of the most recognized managers and music producers in the Latin music industry. (Complaint ("Compl.") ¶ 12-15.) Articles about both Monge and Reynoso have been featured in TVNotas several times. (Rivaroli Decl. ¶ 8.) Monge and Reynoso have a significant fan base in the United States and are no strangers to the entertainment news scene. (Rivaroli Decl. ¶ 9.)

3. Monge and Reynoso were married at a chapel in Las Vegas, Nevada in January of 2007. (Compl. ¶ 16.) Several photographs were taken of Monge and Reynoso that evening, capturing various images of the couple throughout their wedding night (the "Photographs"). (Compl. ¶¶ 16-17.)

4. In February of 2009, Maya published five (5) of the Photographs in TVNotas. (Compl. ¶ 19); (TV Notas Article with Certified Translation, attached to Rivaroli Decl. at ¶ 13, Composite Exh. "B.")

5. Monge and Reynoso brought the instant suit against Maya, Maya Magazines and DOES 1 through 10, for copyright infringement, common law misappropriation of likeness and commercial misappropriation of likeness under California Civil Code § 3344. (Compl. [DE #1].) Plaintiffs did not amend their Complaint to identify any of the DOE defendants.

6. On September 21, 2009, the Maya Defendants filed a Motion to Dismiss Plaintiffs' Misappropriation of Likeness claims (Counts II and III) of Plaintiffs' Complaint [DE 9] because the Photographs Maya published fall within the rubric of the public affair and public interest exceptions of Cal. Civ. Code § 3344(d). This Court granted Maya's Motion to Dismiss on October 26, 2009 [DE 18], leaving only Plaintiffs' claim for Copyright Infringement. This Court also struck Plaintiffs' copyright infringement claims for statutory damages and reasonable attorneys' fees pursuant to 17 U.S.C. §§ 504 and 505, respectively. *See id.*

7. On June 1, 2010, Defendants filed their Motion for Summary Judgment [DE 66] and Plaintiffs filed their Motion for Partial Summary Judgment [DE 57 ].

8. On June 21, 201, this Court conducted a hearing on the parties' Cross Motions for Summary Judgment.

2

**CONCLUSIONS OF LAW**

1. Summary judgment is warranted where there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(c). The burden initially is on the moving party to show entitlement to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This does not require the moving party to disprove matters on which the nonmoving party will have the burden of proof at trial. Rather, the movant need only point out an absence of evidence to support the nonmoving party's case. *Id.* at 325.

2. After the moving party meets its burden, the burden shifts to the nonmoving party to "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (*quoting* Fed. R. Civ. P. 56(e)). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) (*quoting* Fed. R. Civ. P. 56(e)).

3. "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

4. Defendants move for summary judgment in their favor on Plaintiffs' single claim for copyright infringement on the basis of their affirmative defense of the fair use doctrine.

5. Fair use is a mixed question of law and fact. *Harper & Row, Publishers, Inc. v. The Nation Enters.*, 471 U.S. 539, 560 (1985). However, courts regularly resolve fair use issues at the summary judgment stage where there are no genuine issues of material fact. *Castle Rock Entertainment, Inc. v. Carol Publishing Group, Inc.*, 150 F.3d 132, 136 (2d Cir. 1998); *Hustler Magazine, Inc. v. Moral Majority, Inc.*, 796 F.2d 1148, 1150–51 (9th Cir. 1986).

6. A copyright owner's exclusive rights are subject to the statutory section enumerated in 17 U.S.C. § 107. The fair use doctrine requires courts to assess the Defendants' use of copyrighted material according to four nonexclusive factors: (1) the purpose and character of the use including whether such use is of a commercial or nonprofit nature; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the the

1 | copyrighted work as a whole; and, (4) the effect of the use upon the potential market for value of
2 | copyright work. *Mattel, Inc. v. Walking Mountain Productions*, 353 F.3d 792 (9th Cir. 2003).
3 |     7.     The first factor supports a finding of fair use because of the transformative nature
4 | of Defendants' publication. The photographs were used not in their original context as
5 | documentation of Plaintiffs' wedding night but as confirmation of the accompanying text
6 | challenging Plaintiffs' repeated public denials of their marriage.
7 |     8.     In the context of the publication, therefore, the photographs served as evidence that
8 | Plaintiffs had secretly married in spite of their statements to the contrary. Because Defendants
9 | used the photograph in a function that was distinct from their original purpose, the use did not
10 | supersede the objects of the original creation. *See Calkins v. Playboy Enterprises International,*
11 | *Inc.*, 561 F.Supp. 2d 1136 (E.D. Cal. 2008). Moreover, the transformative use of the photographs
12 | outweighs the commercial nature of the publication. *See Campbell v. A-Cuff Rose Music, Inc.*,
13 | 510 U.S. 569 (U.S. 1994). The Court concludes that the second factor is neutral due to the
14 | essentially factual nature of the photographs. The photographs were taken to document the events
15 | that occurred on Plaintiffs' wedding night. The fact that certain of the photographs were taken by
16 | wedding chapel employees rather than the official photographer lends credence to the view that
17 | the photographs were fact-based works.
18 |     9.     Nevertheless, the publication undoubtedly supplanted Plaintiffs' right to control the
19 | first public appearance of the photographs. Yet courts have stressed that this factor is of little
20 | significance in cases where the use was transformative. *See Mattel*, 353 F.2d at 803. Thus, even
21 | assuming that the photographs were creative works, this factor would weigh only slightly in
22 | Plaintiffs' favor.
23 |     10.     The Court finds that the third factor, likewise, is neutral. While Defendants
24 | cropped four of the five photographs that were actually published, they were largely published in
25 | their entirety. Yet this alone is not determinative given that the publication was reasonable, in
26 | light of their purpose, for using the photographs to show that Plaintiffs were in fact married.
27 |     11.     Defendants published only 5 of the 400 photographs of Plaintiffs that Defendants
28 | purchased. The Court finds that Defendants published Plaintiffs' photographs only to the extent

necessary to corroborate the news of Plaintiffs' clandestine marriage.

12.  The fourth factor weighs in favor of fair use because the publication did not usurp a market that properly belonged to the Plaintiffs because no such market existed. It is undisputed that Plaintiffs went to great lengths to conceal their marriage. Indeed, Plaintiff Reynoso's own mother was unaware that the couple had wed.

13.  Thus, there is no indication that they ever intended to market the photographs themselves. Likewise, there is no evidence to suggest that Defendants' use would result in a substantial impact on the potential market for the originals in light of Plaintiffs' stated intention of maintaining the secrecy of their marriage.

14.  Accordingly, the Court finds that the Defendants' publication constituted a fair use under Section 107, and, therefore, Defendants' Motion for Summary Judgment is granted.

15.  In light of the Court's ruling on Defendants' Motion, the Court does not reach the question of whether Defendants' remaining affirmative defenses are subject to summary adjudication. Plaintiffs' Motion for Partial Summary Judgment is thus denied.

IT IS ORDERED that Judgment shall be entered in favor of Defendants pursuant to the Findings of Fact and Conclusions of Law.

Dated: September **30**, 2010.

_____
MANUEL L. REAL
UNITED STATES DISTRICT JUDGE